**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| PEDRO TLAPA CASTILLO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.:  19-CV-50311 |
| v. | ) | |
| | ) | The Honorable Thomas A. Durkin |
| DAVID SNYDERS, Stephenson County Sheriff, | ) | Magistrate Judge Lisa A. Jensen |
| | ) | |
| Defendant. | ) | |

**DEFENDANT DAVID SNYDERS'S MOTION TO DISMISS
<u>PURSUANT TO RULE 12(b)(6)</u>**

*Attorneys for Defendant David Snyders*
Benjamin M. Jacobi, #6296811
Lance E. Neyland, #6331171
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Telephone: (847) 291-0200
Facsimile:  (847) 291-9230
bjacobi@okgc.com
lneyland@okgc.com

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 3

    I.      Claims Arising Under the Trust Act Should Be Dismissed Because the Trust Act
           Is Preempted by Federal Law. ...................................................................... 3

           A.      Preemption Standard. ...................................................................... 3

           B.      The Federal Government's Broad Regulation of Immigration and the
                  Immigration and Nationality Act. ................................................... 4

           C.      Tlapa Alleges that Sheriff Snyders or His Employees Acted in Compliance
                  with Federal Immigration Law and Policy. .................................... 7

           D.      The Illinois Trust Act Conflicts with Federal Immigration Law and
                  Attempts to Supplement a Field Dominated by Federal Regulation. ......... 7

                  1.      The Trust Act is preempted under Conflict Premption................... 8

                  2.      The Trust Act is preempted under Field Premption..................... 11

    II.     Sheriff Snyders Has Qualified Immunity to All Claims Pursuant to
           § 1357(g)(8). ...................................................................................... 12

    III.    This Court Should Bar All Claims for Money Damages and Dismiss Tlapa's
           Claims for Abuse of Process and False Imprisonment as Barred by the Tort
           Immunity Act. ................................................................................... 13

           A.      Immunity for Failing to Enforce Any Law (§2-205). .............................. 15

           B.      Immunity for Acting In Accordance with Enactment (§2-203)............... 16

           C.      Immunity for Discretionary Acts (§2-201). ............................................. 16

    IV.    This Court Should Dismiss Plaintiff's Claim for Violation of the Illinois
           Constitution (Count IV) Because Plaintiff Does Not Have a Private Right of
           Action to Bring that Claim.................................................................... 18

V.  This Court Should Dismiss the Abuse of Process Count Because Plaintiff Fails to Allege Sufficient Facts to Sustain the Claim. ....................................................... 18

CONCLUSION ............................................................................................................. 19

CERTIFICATE OF SERVICE ...................................................................................... 21

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Anthony v. City of Chicago*, 382 Ill. App. 3d 983, 992 (1st Dist. 2008)................................ 15, 16

*Arizona v. United States¸* 567 U.S. 387, 399 (2012).................................................... 3, 4, 5, 11, 12

*Arroyo v. Baldwin*, No. 19-CV-27-NJR, 2019 WL 2357307 (S.D. Ill. June 4, 2019)................. 13

*Austin v. City of Chicago*, No. 18-CV-7268, 2019 WL 4750279, at *2 n.2 (N.D. Ill. Sept. 30, 2019) ............................................................................................................................................. 6

*Bonnell v. Regional Bd. of School Trustees,* 258 Ill. App. 3d 485, 489 (5th Dist. 1994)............. 17

*Chicago Flood Litig.*, 176 Ill. 2d 179, 195 (1997)......................................................................... 17

*City of Chicago v. Sessions*, 264 F. Supp. 3d 933, 948 (N.D. Ill. 2017) ............................. 9-10, 15

*City of New York v. United States*, 179 F.3d 29 (2d Cir. 1999)..................................................... 10

*Consolino v. Dart*, No. 17-CV-9011, 2019 WL 4450498, at *8 (N.D. Ill Sept. 17, 2019) ......... 18

*Harinek v. 161 North Clark Street Ltd.,* 181 Ill. 2d 335, 341 (1988) ........................................... 17

*Kumar v. Bornstein*, 354 Ill. App. 3d 159, 165 (2d Dist. 2004) ................................................... 19

*Lee v. Glenn Ellyn*, No. 16-CV-7170, 2017 WL 2080422, at *4 (N.D. Ill. May 15, 2017) ......... 18

*Mason v. SmithKline Beecham Corp.*, 596 F.3d 387, 390 (7th Cir. 2010) .................................... 4

*Mora v. State,* 68 Ill. 2d 223, 233 (1977)..................................................................................... 17

*Morena v. Napolitano*, No. 11-C-5452, 2016 WL 5720465.......................................................... 7

*Pacemaker Food Stores, Inc. Seventh Mont Corp.*, 143 Ill. App 3d 781, 785 (2d Dist. 1986).... 13

*Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)................................................................... 13

*Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248 (2004)................................. 14, 15

*Reyes v. Board of Educ. of City of Chicago*, 2019 IL App (1st) 180593................................ 15, 16

*Rozsavolgyi v. City of Aurora*, 2016 IL App (2d) 150493............................................................ 14

*Simmons v. City of Pekin*, 2012 IL App (3d) 110636-U ........................................................ 14, 15

iii

*Snyder v. Curran Township,* 167 Ill. 2d 466, 474 (1995) ............................................................ 17

*Socha v. City of Joliet*, No. 18-CV-5681, 2019 WL 2576545, at *3 (N.D. Ill. June 24, 2019).... 18

*West v. Kirkham,* 147 Ill. 2d 1, 11 (1992) .................................................................................. 18

*Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008) .............................................................. 13

## **Statutes**

8 U.S.C. § 1101 et seq. .................................................................................................................. 5

8 U.S.C. § 1357 ............................................................................................................. 5, 6, 10, 16

8 U.S.C. § 1357(g)(10) ..................................................................................... 3,5, 6, 8, 10, 12

8 U.S.C. § 1373(b) ....................................................................................................................... 10

745 ILCS 10/2-203 ........................................................................................................... 1, 16, 20

745 ILCS 10/2-205 ....................................................................................................... 1, 15, 16, 20

8 U.S.C. 1357(g) ........................................................................................................................... 5

745 ILCS 10/2-201 ............................................................................................................... 1, 17

8 C.F.R. § 287.7 ............................................................................................................................. 5

8 U.S.C. § 1357(a) ......................................................................................................................... 5

8 U.S.C. § 1357(g)(10) (B) .................................................................................................. 9,16, 18

8 U.S.C. § 1357(g)(8) ............................................................................................................ 1, 12

Illinois Const., Art. I, § 6 ............................................................................................ 1, 3, 12, 18, 20

U.S. Const., Art. I, § 8 ................................................................................................................... 4

## INTRODUCTION

Immigration policy is hotly political, and local governments have reacted to federal immigration policy by enacting their own policies. One example of State reaction to federal policy is the Illinois Trust Act, which was enacted in 2017 and forbids local law enforcement in Illinois from cooperating with federal immigration agencies by detaining individuals subject to federal immigration detainers. Plaintiff Pedro Tlapa Castillo ("Tlapa") sued Sheriff David Snyders for violating the Trust Act after Tlapa was detained by Sheriff Snyders on an immigration detainer or non-judicial warrant. However, the Trust Act exceeds the bounds of constitutional limits. It is preempted by federal law because (1) it directly conflicts with Congress's stated purpose and objective of federal immigration regulation ("conflict preemption"), and (2) it intervenes in a field of law where federal interest is so dominant that the federal system is assumed to preclude enforcement of state laws on the same subject ("field preemption").

Further, Sheriff Snyders has qualified immunity (as authorized by the 8 U.S.C. § 1357(g)(8)), and has tort immunity under the Illinois Tort Immunity Act for (1) failing to enforce a law (the Trust Act) pursuant to 745 ILCS 10/2-205, (2) acting in accordance with an enactment pursuant to 745 ILCS 10/2-203 (the Immigration and Nationality Act), and (3) exercising discretion as a policymaker when Sheriff Snyders decided to honor cooperation with the federal agencies pursuant to 745 ILCS 10/2-201.

Finally, Tlapa does not have standing to bring a private cause of action under Art. I, § 6 of the Illinois Constitution, and Tlapa fails to state a claim for abuse of process.

This court should dismiss all claims with prejudice.

1

## BACKGROUND

On January 1, 2019, at around 7:30 a.m., Tlapa was driving in Freeport. (¶ 24.)[1] Tlapa alleges that the roads were icy, and he failed to stop at a stop sign at the bottom of a hill when he skidded past it. (¶ 24.) A Sheriff's Department squad car with two deputies pulled Tlapa over. (¶ 25.) Tlapa alleges that he did not have a valid driver's license at the time. (¶ 26.) Tlapa alleges that he produced a valid insurance card, but the deputy told him that it was expired. (¶ 25.) Tlapa alleges that the Sheriff's deputies arrested him for driving without a license, driving without insurance, and disregarding a stop sign. (¶ 28.) The deputies called for a tow truck, which towed Tlapa's truck away. (¶ 27.)

Tlapa alleges that he was placed in a holding cell at Stephenson County Jail until approximately 10:00 a.m., at which time Sheriff's deputies booked him. (¶ 29.) Tlapa alleges that he posted bond of $150.00 at about 10:30 a.m., and that he was placed back in the holding cell. (¶ 30, 32.)

About an hour later, a Sheriff's deputy told Tlapa that he had a phone call. (¶ 32.) Tlapa alleges that the person on the phone was an ICE officer who spoke to him in Spanish, asked for his name, the names of his parents, his country of origin, and the named of his hometown. (¶ 33.) Tlapa alleges that he answered these questions truthfully. (¶ 33.) Tlapa alleges that the ICE officer notified him, in Spanish, that ICE would be coming to pick him up. (¶ 33.) Tlapa alleges that he remained in Stephenson County Jail until an ICE official picked him up at about 12:00 p.m. on January 2, 2019. (¶ 34.) Tlapa alleges that he was "unlawfully detained . . . for approximately 24 hours after he posted bond and was entitled to release." (¶ 35.) Tlapa alleges that he was detained pursuant to "immigration detainers or non-judicial immigration warrants." (¶ 46.) Tlapa alleges that as a result of the 24-hour unlawful detention and "unlawful transfer of

---

[1] Citations to paragraphs in the Complaint, which is located at Doc. 1-1, are referenced with only a "¶" symbol.

custody to ICE," Tlapa was away from his family for weeks, was unable to work, and suffered extreme emotional distress. (¶ 36.)

Tlapa alleges that the Sheriff and his deputies were on notice of the requirements of the Illinois Trust Act in that the Illinois Attorney General sent a Guidance publication to law enforcement agencies in Illinois, and because attorneys for another detainee had communicated to Sheriff's deputies regarding the Trust Act several months before Tlapa was detained. (¶¶ 37–42.)

Tlapa brings five counts. Count I alleges a violation of the Illinois Trust Act. Count II alleges false imprisonment. Count III alleges an abuse of process. Count IV alleges a violation of Article I, § 6 of the Illinois Constitution, which protects against unreasonable seizures. Count V requests a declaration under the Illinois Declaratory Judgment statute that the Sheriff violated the Trust Act and Article 1, § 6 of the Illinois Constitution.

## ARGUMENT

**I.      Claims Arising Under the Trust Act Should Be Dismissed Because the Trust Act Is Preempted by Federal Law.**

### A.      Preemption Standard.

"The Supremacy Clause provides a clear rule that federal law 'shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.'" *Arizona v. United States*¸ 567 U.S. 387, 399 (2012) (quoting U.S. Const. Art. VI, cl. 2.) "Under this principle, Congress has the power to preempt state law." *Id.*

In addition to "express preemption" contained in a statute, Congress's intent to preempt can be implied. "States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Id.* at

399 "The intent to displace state law altogether can be inferred from a framework of regulation so pervasive that Congress left no room for States to supplement it or where there is a federal interest so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.* (quotes omitted). This "preemption reflects a congressional decision to foreclose any state regulation in the area, even if it is parallel to federal standards." *Id.* at 401. This is known as "field preemption," *Id.* at 401, or "implied preemption." *Mason v. SmithKline Beecham Corp.*, 596 F.3d 387, 390 (7th Cir. 2010).

Also and independent from field preemption, "state laws are preempted when they conflict with federal law." *Arizona*, 567 U.S. at 399. "This includes cases where compliance with both federal and state regulations is a physical impossibility, and those instances where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (quotes omitted). This is known as "conflict preemption." *Mason*, 596 F.3d at 390.

### B. The Federal Government's Broad Regulation of Immigration and the Immigration and Nationality Act.

The federal government's "broad, undoubted power over the subject of immigration and the status of aliens" is axiomatic. *Arizona*¸ 567 U.S. at 394. "This authority rests, in part, on the National Government's constitutional power to 'establish an uniform Rule of Naturalization,' Art. I, § 8, cl. 4, and its inherent power as sovereign to control and conduct relations with foreign nations." *Id.* at 394–95. "The federal power to determine immigration policy is well settled." *Id.* at 395. "Immigration policy can affect trade, investment, tourism, and diplomatic relations for the entire Nation, as well as the perceptions and expectations of aliens in this country who seek the full protection of its laws." *Id.*

"Federal governance of immigration and alien status is extensive and complex." *Id.* at

4

395. *See generally* the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq. (the "INA"). "Congress has specified which aliens may be removed from the United States and the procedures for doing so." *Arizona*, 567 U.S. at 396. "Aliens may be removed if they were inadmissible at the time of entry, have been convicted of certain crimes, or meet other criteria set by federal law." *Id*. "Removal is a civil, not criminal, matter." *Id*. "A principal feature of the removal system is the broad discretion exercised by immigration officials." *Id*.

Immigration and Customs Enforcement ("ICE") is an agency of the Department of Homeland Security that "conducts criminal investigations involving the enforcement of immigration-related statutes." *Id*. at 397. "ICE officers are responsible for the identification, apprehension, and removal of illegal aliens from the United States." *Id*. (quotes omitted).

Congress authorized the issuance of immigration detainers for enforcement purposes in the INA, specifically in 8 U.S.C. § 1226 and § 1357. *See also* 8 C.F.R. § 287.7 ("Detainers are issued pursuant to sections 236 and 287 of the Act and this chapter 1."). Section 1357 sets forth the powers of the immigration officers and employees. 8 U.S.C. § 1357. Section 1357(a) authorizes immigration officers to detain, without warrant, any alien or person believed to be an alien for the purpose of interrogating the person as to his or her right to be or to remain in the Unites States, and further authorizes warrantless arrests of aliens under certain circumstances. 8 U.S.C. § 1357(a)

Section 1357(g), titled, "Performance of Immigration Officer Functions by State Officers and Employees," authorizes relationships and cooperation between federal and state officials. Section 1357(g)(1)–(6) authorize contractual relationships between the federal government and local entities (subject to certain conditions, like the Attorney General's oversight). Section 1357(g)(10) authorizes cooperation between federal and state authorities, even absent a

5

contractual agreement, and states:

> Nothing in this subsection shall be construed to require an agreement under this subsection in order for any officer or employee of a State or political subdivision of a State—
>
>> (A) to communicate with the Attorney General regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States; or
>>
>> (B) otherwise cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States.

8 U.S.C. § 1357(g)(10).

The Department of Homeland Security issued a Memorandum called the "Guidance on State and Local Governments' Assistance in Immigration Enforcement and Related Matters," available at https://www.dhs.gov/sites/default/files/publications/guidance-state-local-assistance-immigration-enforcement.pdf (last visited December 18, 2019) (referred to herein as the "Guidance Memorandum," and attached as Exhibit A).[2] In the Guidance Memorandum, the DHS interprets the "cooperation" requirement of § 1357(g)(10) as including "State and local law enforcement officers providing assistance to DHS immigration officers in the execution of a civil or criminal search or arrest warrant for individuals suspected of being in violation of federal immigration law," and "Allowing federal immigration officials access to state and local facilities for the purpose of identifying detained aliens who are held under the state or local government's authority, but who also may be of interest to the Federal Government." Guidance Memo. at 13.

ICE issued Policy 10074.2, titled, "Issuance of Immigration Detainers by ICE Immigration Officers," available at https://www.ice.gov/sites/default/files/documents/Document/2017/10074-2.pdf (last visited

---

[2] Defendant requests that this court take judicial notice of DHS and ICE publications that are publicly available. *Austin v. City of Chicago*, No. 18-CV-7268, 2019 WL 4750279, at *2 n.2 (N.D. Ill. Sept. 30, 2019) (Durkin, J.).

December 18, 2019) (referred to herein as the "ICE Policy 10074.2", and attached as Exhibit B). ICE Policy 10074.2 requires that ICE Officers use Form I-247A to request detainers from state and local law enforcement, and requires that the ICE officer establish probable cause before issuing such a detainer. ICE Policy 10074.2 ¶¶ 2.1, 2.4, 5.1. Further, in observing the ruling in *Morena v. Napolitano*, No. 11-C-5452, 2016 WL 5720465, at *8 (N.D. Ill. Sept. 30, 2016) (criticizing ICE's use of detainer form I-247D and I-245X—since withdrawn from use—without a warrant), ICE Policy 10074.2 requires that the ICE officer accompany Form I-247A with either a properly completed Form I-200 (Warrant for Arrest of Alien) or a properly completed Form I-205 (Warrant of Removal/Deportation) signed by an authorized ICE immigration officer. ICE Policy 10074.2 ¶¶ 2.4, 5.2.

> **C.      Tlapa Alleges that Sheriff Snyders or His Employees Acted in Compliance with Federal Immigration Law and Policy.**

Tlapa alleges that an ICE officer interviewed him (¶ 33), and that the Sheriff "continued to detain him solely based on immigration detainers or non-judicial immigration warrants[.]" (¶ 46) Tlapa was then transferred to the custody of ICE. (¶ 36.)

Counts I and IV do not challenge ICE procedure or the detainer itself, but rather assert that Sheriff Snyders's cooperation with ICE and the detainer issued by ICE violated the Illinois Trust Act, which prohibits such cooperation on detainers between local and federal agencies. Tlapa's claims that Sheriff Snyders violated the Trust Act by complying with federal immigration detainers must be dismissed because the Trust Act is preempted by federal law.

> **D.      The Illinois Trust Act Conflicts with Federal Immigration Law and Attempts to Supplement a Field Dominated by Federal Regulation.**

The Illinois Trust Act's prohibition of Sheriff Snyders cooperating with ICE is preempted by federal law under both "conflict preemption" and "field preemption."

### 1.    The Trust Act is preempted under Conflict Preemption.

Section 10 of the Trust Act defines "Immigration detainer" as "a document issued by an immigration agent that is not approved or ordered by a judge and requests a law enforcement agency or law enforcement official to provide notice of release or maintain custody of a person, including a detainer issued under Section 1226 or 1357 of Title 8 of the United States Code or Section 236.1 or 287.7 of Title 8 of the Code of Federal Regulations." 5 ILCS 805/10.

Section 15(a) of the Trust Act states, "A law enforcement agency or law enforcement official shall not detain or continue to detain any individual solely on the basis of any immigration detainer or non-judicial immigration warrant or otherwise comply with an immigration detainer or non-judicial immigration warrant."

The Trust Act explicitly commands local law enforcement to refuse cooperation with federal immigration detainers that are authorized by federal law, and even identifies the federal statutes and regulations that otherwise authorize the federal detainers with which the Trust Act prohibits compliance. Not only does this mandate conflict with the federal detainers themselves, but it stands as a direct obstacle to the objective of cooperation between local and federal agencies codified at § 1357(g)(10). This is textbook conflict preemption.

The conflict with § 1357(g)(10) is highlighted in the Guidance Memorandum, which discusses the purpose and objective of "cooperation." The Guidance Memorandum states the following:

> The INA's "cooperation" requirement means that a state or local government may not adopt its own mandatory set of directives to implement the state's own enforcement policies, because such a mandate would serve as an obstacle to the ability of individual state and local officers to cooperate with federal officers administering federal policies and discretion as the circumstances require.

Guidance Memo. at 8. The Guidance Memorandum continues, "State or local laws or actions

8

that are not responsive to federal control or direction, or categorically demand enforcement in such a way as to deprive the Federal Government—and state and local officers—of the flexibility and discretion that animates the Federal Government's ability to globally supervise immigration enforcement, do not constitute the requisite 'cooperation' within the meaning of 8 U.S.C. § 1357(g)(10) (B), even if the state or local government's own purpose is to enforce federal immigration law."  Guidance Memo. at 8.

The Trust Act commands that Sheriff Snyders be unresponsive to federal control or direction in immigration enforcement.  The Trust Act categorically deprives the federal government—and state and local government—of the flexibility and discretion that animates the federal government's ability to globally supervise immigration enforcement.  The Trust Act is exactly the type of conflict with federal immigration efforts against which the Guidance Memorandum warns.

As if the plain language of the Trust Act were not clear enough to establish a conflict between its mandates and federal law, the Attorney General for the State of Illinois issued its own Guidance Memorandum, which Tlapa attaches as Exhibit A to his complaint, titled, "Guidance to Law Enforcement: Authority Under Illinois and Federal Law to Engage in Immigration Enforcement," (hereinafter referred to as "IL Guidance Memorandum"), which reinforces the conflict.  The IL Guidance Memorandum does not sidestep the issue; it confirms the conflict in the very first paragraph:  "Further, on August 28, 2017, Illinois enacted the Illinois Trust Act, a statewide law that clarifies and limits the authority of state and local officers to enforce federal civil immigration law or cooperate with federal immigration authorities."  IL Guidance Memo. at 1.

Similar conflicts between INA and local regulations were discussed in *City of Chicago v.*

9

*Sessions*, 264 F. Supp. 3d 933, 948 (N.D. Ill. 2017) and *City of New York v. United States*, 179 F.3d 29 (2d Cir. 1999), and these cases are instructive. In *Chicago* and *New York*, the Northern District of Illinois and the Second Circuit, respectively, approved the INA's prohibition (codified at § 1373(b)) of cities restricting their own employees from providing and exchanging information with federal entities regarding the immigration statuses of individuals. Both New York and Chicago had local regulations prohibiting their respective employees from providing immigration information to the federal government (an executive order in New York, and Chicago's Welcoming City Ordinance). The cities challenged the § 1373(b) prohibition as commandeering their employees under the 10th Amendment, and the reviewing courts necessarily considered the § 1373(b) prohibition in terms of the Supremacy Clause. The District Court in *Chicago* relied on the Second Circuit's opinion in *New York* to hold that § 1373 "prohibits prohibitions on local official's voluntary participation" and that States "do not have the power to command passive resistance to federal programs." *Chicago*, 264 F. Supp. 3d at 948. The District Court stated, "The Court has not been presented with, nor could it uncover, any case holding that the scope of state sovereignty includes the power to forbid state or local employees from voluntarily complying with a federal program." *Id*. at 948. The passive nature of § 1373(b) rendered it consistent with the 10th Amendment, and its status as a federal statute prioritized it over the local regulations under the Supremacy Clause. *See id*. at 951.

Similarly, in this case, the Trust Act's prohibition on local government's cooperating with the federal immigration detainers is an effort by the State to forbid state and local employees from voluntarily complying with federal programs. This cannot be reconciled with § 1357(g)(10)'s authorization of local law enforcement agencies to cooperate with immigration detainers issued by the federal government. *Chicago* and *New York* support a finding that the

10

Trust Act is preempted under these circumstances.

The Trust Act conflicts with federal law. It was designed to. It is a challenge to federal immigration policy. The Trust Act may be a powerful political statement on Illinois's position on immigration policy, but it is unenforceable. It is preempted, and is thus unconstitutional both facially and as-applied to the allegations in the complaint.

### 2. The Trust Act is preempted under Field Preemption.

Independent of the Trust Act's preemption under "conflict preemption," the Trust Act is also preempted under "field preemption." The federal government comprehensively regulates immigration generally, and detainers specifically. Detainers are issued pursuant to 8 U.S.C. § 1226 and § 1357. They are regulated in more detail by 8 C.F.R. 287.7. The Department of Homeland Security and ICE have issued policy statements on their application. Guidance Memo.; ICE Policy 10074.2. ICE promulgates detainer forms (currently Form I-247A), and instructions on how to use them. ICE Guidance, available at https://www.ice.gov/sites/default/files/documents/Document/2017/I-247A-Guidance.PDF (last visited on December 18, 2019). ICE revises and replaces the detainer forms from time to time. *Id*. The federal government's control over detainers is evident in the pleadings in this case: Tlapa alleges that an ICE officer interviewed Tlapa and then exercised his or her discretion to issue a detainer. (¶ 33, 46.) Tlapa does not allege that Sheriff Snyders exercised any discretion in the issuance of the detainer. The framework of this legislation related to detention of aliens and the issuance of immigration detainers is comprehensive, and exclusively within the purview of Congress. Congress did not leave room for the States to supplement or interfere in this area.

In a similar set of circumstances, the Supreme Court held that Arizona's law in allowing state officers to arrest individuals on the basis of removability was preempted because that task

11

was highly regulated by the INA and federal agency oversight. *Arizona*, 567 U.S. at 408. The Court observed, "By authorizing state officers to decide whether an alien should be detained for being removable, § 6 [of the Arizona law] violates the principle that the removal process is entrusted to the discretion of the Federal Government." *Id*. at 409.

Although the Illinois command is the opposite of the Arizona command (the former prohibiting compliance with detainers, and the latter authorizing state officers to operate independent of a detainer), the federal regulations are the same. They are expansive. They are detailed. The policy considerations have been weighed by Congress and authority has been delegated to the DHS. By prohibiting local entities from complying with federal detainer requests, the State of Illinois is violating the principle that the removal process is entrusted to the discretion of the Federal Government. The Trust Act is "field preempted."

Because the Trust Act is preempted, this court must dismiss Count I and Count IV with prejudice.

## II. Sheriff Snyders Has Qualified Immunity to All Claims Pursuant to § 1357(g)(8).

Section 1357(g)(8) states, "An officer or employee of a State or political subdivision of a State acting under color of authority under this subsection, or any agreement entered into under this subsection, shall be considered to be acting under color of Federal authority for purposes of determining the liability, and immunity from suit, of the officer or employee in a civil action brought under Federal or State law." 8 U.S.C. § 1357(g)(8).

Sheriff Snyders is alleged to have cooperated with an immigration detainer or non-judicial warrant (¶ 46). Sheriff Snyders's cooperation was authorized by § 1357(g)(10), and he was acting under color of subsection 1357(g). Inasmuch, Sheriff Snyders shall be considered to be acting under color of Federal authority for purposes of determining liability, and immunity

from suit, for any action, including those brought under state law. § 1357(g)(8).

Sheriff Snyders is thus entitled to qualified immunity. For qualified immunity, the court must determine (in any order) (1) whether a plaintiff has been deprived of a statutory or constitutional right; and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009). Once raised, it is the plaintiff's burden to defeat qualified immunity. *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008).

The pervasive conflict between federal and state law on immigration and detainers establishes qualified immunity for Sheriff Snyders for any liability arising out of detaining Tlapa. As set forth above, it is far from clear that Tlapa's rights under the Trust Act are enforceable. There are no cases analyzing preemption of the Trust Act (there is only one case mentioning the Trust Act at all—*Arroyo v. Baldwin*, No. 19-CV-27-NJR, 2019 WL 2357307 (S.D. Ill. June 4, 2019)—it is not helpful here). Many cases, as set forth above, have found various state laws regulating immigration preempted. Even assuming Tlapa's rights were violated under the Trust Act, those rights were not clearly established and Sheriff Snyders is entitled to qualified immunity for all damages arising from the detention of Tlapa.

III. **This Court Should Bar All Claims for Money Damages and Dismiss Tlapa's Claims for Abuse of Process and False Imprisonment as Barred by the Tort Immunity Act.**

Counts I–IV each request compensatory money damages arising from his 24-hour detention on the immigration detainer, including emotional damages. Count V seeks a declaration under the Illinois Declaratory Judgment Act that Sheriff Snyders violated the Trust Act. Since the Illinois Declaratory Judgment Act authorizes "further relief based upon the declaration of right" that may be necessary or proper following the declaration, Tlapa could seek consequential money damages if he prevails in his action for declaratory judgment. *See Pacemaker Food Stores, Inc. Seventh Mont Corp.*, 143 Ill. App 3d 781, 785 (2d Dist. 1986). All

13

such money damages are barred by the Illinois Local Governmental and Governmental Employees Tort Immunity Act.

The purpose of the Tort Immunity Act is to protect local public entities and public employees from liability arising from the operation of government. 745 ILCS 10/1-101.1. The Tort Immunity Act defines "Injury" as "death, injury to a person, or damage to or loss of property . . . alleged in a civil action, whether based upon the Constitution of the United States or the Constitution of the State of Illinois, and the statutes or common law of Illinois or of the United States." 745 ILCS 10/1-204. This definition was added to the Tort Immunity Act in 1986 to explicitly include within the scope of the Tort Immunity Act injuries arising from violations of the Constitution of the State of Illinois, abrogating a series of earlier cases that held that the Tort Immunity Act did not apply to constitutional violations. P.A. 84-1431, Art. 1, § 2, eff. Nov. 25, 1986; *see Simmons v. City of Pekin*, 2012 IL App (3d) 110636-U, ¶ 13.

The Illinois Appellate Court in *Rozsavolgyi v. City of Aurora*, 2016 IL App (2d) 150493, unambiguously held that the Tort Immunity Act bars claims for damages arising from alleged violations of the Illinois Constitution. *Id*. ¶ 112 ("Having determined that plaintiff's claims are constitutionally grounded, we next address whether the City may assert immunity as to plaintiff's claims for damages. We answer that question in the affirmative.") In so ruling, the appellate court relied on the Illinois Supreme Court's decision in *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248 (2004), which declined to "adopt or approve the appellate court's reasoning that the Tort Immunity Act categorically excludes actions that do not sound in tort[.]" *Raintree Homes*, 209 Ill. 2d at 261 (finding, however, that Plaintiffs sought "relief other than damages"— equitable restitution—which was not barred by the Tort Immunity Act). The appellate court's decision in *Rozsavolgyi* was vacated by the Illinois Supreme Court on

14

jurisdictional grounds, 2017 IL 121048 (finding that the appellate court's review of the certified question was overbroad under Rule 308), but the appellate court's reasoning is a persuasive indicator that the scope of the Tort Immunity Act bars claims for money damages arising under the Illinois Constitution. *See also Pleasant Hill Cemetery Ass'n .,* 2013 IL App (4th) 120645, ¶ 23 ("Plaintiffs quote the appellate court's reasoning in [*Raintree Homes*], that 'the Tort Immunity Act . . . applies only to action in tort.' That case, however, went to the supreme court, and the supreme court was unconvinced by the appellate court's reasoning that the Tort Immunity Act categorically excludes actions that do not sound in tort."); *Simmons*, 2012 IL App (3d) 110636-U, ¶ 12 (relying on *Raintree Homes* for the proposition, "The plain language of the Act includes any civil action 'based upon the common law or statutes, or Constitution of this State,' 745 ILCS 10/8-101(c), meaning constitutional claims must be included in the Act.")[3]

All money damages sought in this case against Sheriff Snyders arising from Tlapa's detention, and Tlapa's tort claims for false imprisonment and abuse of process, are barred by the following immunities in the Tort Immunity Act.

### A. Immunity for Failing to Enforce Any Law (§2-205).

Section 2-205 states, "A public employee is not liable for . . . his failure to enforce any law." 745 ILCS 10/2-205. The same immunity extends to public entities in 745 ILCS 10/2-103. There is no willful and wanton exception. *Anthony v. City of Chicago*, 382 Ill. App. 3d 983, 989 (1st Dist. 2008). Section 2-103 immunizes the passivity of nonenforcement, but is not limited to situations involving a total failure to take steps to enforce the law. *Reyes v. Board of Educ. of City of Chicago*, 2019 IL App (1st) 180593, ¶ 40. "Section 2-103 applies even when a

---

[3] Unreported decisions are not controlling precedent. Rather, the County Defendants refer to this unreported decision only as persuasive authority. *See Byrne v. Hayes Beer Distr. Co.*, 2018 IL App (1st) 172612, ¶ 22 ("[N]othing in [Rule 23] expressly prohibits a trial court or the appellate court from adopting the reasoning of an unpublished order.")

governmental entity took action at some earlier time, but failed to act at all when the injury occurred." *Id.* Section 2-103 "extends to the failure to enforce all manner of statutes and ordinances." *Anthony v. City of Chicago*, 382 Ill. App. 3d 983, 992 (1st Dist. 2008).

In this case, all claims arise from Sheriff Snyders's alleged failure to enforce the Trust Act. This is a straightforward application of the Tort Immunity Act. Sheriff Snyders has immunity under § 2-205 for his failure to enforce the Trust Act. All money damages should be barred, and Tlapa's claims for false imprisonment and abuse of process should be dismissed.

### B.      Immunity for Acting In Accordance with Enactment (§2-203).

Section 2-203 states, "If a public employee acts in good faith, without malice, and under the apparent authority of an enactment that is unconstitutional, invalid or inapplicable, he is not liable for any injury caused thereby except to the extent that he would have been liable had the enactment been constitutional, valid and applicable." 745 ILCS 10/2-203. "Enactment" is defined as a "constitutional provision, statute, ordinance or regulation." 745 ILCS 10/1-203.

Sheriff Snyders allegedly detained Tlapa under the authority of an immigration detainer or non-judicial immigration warrant (¶ 46), which was authorized by the INA, 8 U.S.C. § 1226 or § 1357, and its regulation codified at 8 C.F.R. 287.7. Sheriff Snyders acted in accordance with 8 U.S.C. § 1357(g)(10) (B), which authorized cooperation between the federal and local governments. Sheriff Snyders has immunity arising from these acts pursuant to § 2-203 because he was acting under the apparent authority of an enactment. All money damages should be barred, and Tlapa's claims for false imprisonment and abuse of process should be dismissed.

### C.      Immunity for Discretionary Acts (§2-201).

Section 2-201 states, "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not

liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201. There is no willful and wanton exception. *In re Chicago Flood Litig.*, 176 Ill. 2d 179, 195 (1997).

The discretionary immunity doctrine codifies the long-standing concept in common law that a public entity is afforded immunity from liability for the performance of discretionary acts, but not for ministerial tasks. *See id*. The Illinois Supreme Court has explained that "discretionary acts are those which are unique to a particular public office, while ministerial acts are those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act." *Snyder v. Curran Township,* 167 Ill. 2d 466, 474 (1995). Discretionary acts are those requiring personal deliberation, decision, and judgment, while ministerial acts are those amounting to the performance of a task in accordance with an order. *Bonnell v. Regional Bd. of School Trustees,* 258 Ill. App. 3d 485, 489 (5th Dist. 1994).

For § 2-201 immunity to apply, the public official must also have been engaged in the formulation of policy. *See Harinek v. 161 North Clark Street Ltd.,* 181 Ill. 2d 335, 341 (1988). Policy decisions are those that require the public entity or official to "balance competing interests and to make a judgment call as to what solution will best serve each of those interests." *Id.* at 342 (citations omitted). A policy determination is one requiring considered evaluation and judgment by a governmental unit, utilizing its own particular expertise, to formulate principles and procedures directed toward the achievement of common and general goals for the community's benefit. *See, e.g.*, *Mora v. State,* 68 Ill. 2d 223, 233 (1977). A public official is generally making a policy decision when, using her expertise, she determines a course of action considering several factors including the public benefit, the practicability of the procedure, and the best

methods to be employed considering available resources, costs, and safety. *See, e.g.*, *West v. Kirkham,* 147 Ill. 2d 1, 11 (1992).

Sheriff Snyders's decision to cooperate with an immigration detainer was discretionary under the INA, 8 U.S.C. § 1357(g)(10) (B), and was a matter of policy, *Consolino v. Dart*, No. 17-CV-9011, 2019 WL 4450498, at *8 (N.D. Ill Sept. 17, 2019) (observing that a sheriff is a "policymaker" for *Monell* purposes). This is the quintessential circumstance triggering 2-201 immunity. All money damages should be barred, and Tlapa's claims for false imprisonment and abuse of process should be dismissed.

**IV.** **This Court Should Dismiss Plaintiff's Claim for Violation of the Illinois Constitution (Count IV) Because Plaintiff Does Not Have a Private Right of Action to Bring that Claim.**

The courts in this district overwhelming hold that Art. I, § 6 of the Illinois Constitution "does not create a stand-alone cause of action where other remedies exist." *E.g.*, *Socha v. City of Joliet*, No. 18-CV-5681, 2019 WL 2576545, at *3 (N.D. Ill. June 24, 2019) (Alonso, J.); *Lee v. Glenn Ellyn*, No. 16-CV-7170, 2017 WL 2080422, at *4 (N.D. Ill. May 15, 2017) (Dow, J.). In *Lee*, just like in this case, Plaintiff alleged unlawful seizure of his person and asserted a count under Art. I, § 6 of the Illinois Constitution. *Lee*, 2017 WL 2080422, at *1. The court in *Lee* held that other remedies were available to Plaintiff, and dismissed the Art. I, § 6 count. In this case, there are also other remedies available to Tlapa (he has four other counts asserted in his complaint arising from the same detention). Just like in *Lee* and *Socha*, this court should dismiss Tlapa's claim for violation of Art. I, § 6 the Illinois Constitution with prejudice.

**V.** **This Court Should Dismiss the Abuse of Process Count Because Plaintiff Fails to Allege Sufficient Facts to Sustain the Claim.**

"Abuse of process is defined as the misuse of legal process to accomplish some purpose outside the scope of the process itself." *Kumar v. Bornstein*, 354 Ill. App. 3d 159, 165 (2d Dist.

2004).  To state a claim for abuse of process, the plaintiff must allege "(1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings." *Id*.  "In order to satisfy the first element, a plaintiff must plead facts that show that the defendant instituted proceedings against him for an improper purpose, such as extortion, intimidation, or embarrassment." *Id*.  "In order to satisfy the second element, the plaintiff must show that the process was used to accomplish some result that is beyond the purview of the process." *Id*.  "The elements are strictly construed, as the tort of abuse of process is not favored under Illinois law." *Id*.

In this case, Tlapa pleads neither element sufficiently.  As to the first element, Tlapa pleads that Sheriff Snyders detained Tlapa for the improper purpose of allowing ICE to take custody of him after he had posted bond (¶ 67), but that is not an "ulterior purpose or motive" that sustains an abuse of process claim.  Sheriff Snyders did not detain Tlapa to extort, intimidate, or embarrass him.  Sheriff Snyders detained Tlapa because Tlapa was subject to an immigration detainer or non-judicial warrant issued by ICE after ICE interviewed Tlapa.  (¶ 33, 46.)  There is no ulterior motive alleged other than to detain Tlapa for ICE, which is not a sufficiently improper purpose to state an abuse of process claim.

Further, as to the second element, the detention itself was proper: one authorized by the INA, the federal regulations, and consistent with Guidance issued by DHS.

Tlapa cannot plead a claim for Abuse of Process.  His claim should be dismissed with prejudice.

## CONCLUSION

This court should dismiss Tlapa's complaint with prejudice for the following reasons:

1. Tlapa's claims under the Trust Act are preempted by both conflict preemption and field

preemption.

2. Tlapa's claims are barred by the doctrine of qualified immunity.

3. Sheriff Snyders has tort immunity under § 2-205, 2-203, and 2-201.

4. Tlapa does not have a private right of action under Art. I, § 6 of the Illinois Constitution.

5. Tlapa fails to state a claim for abuse of process.

WHEREFORE, Defendant Sheriff Snyders requests that this court dismiss Tlapa's complaint with prejudice or, alternatively, bar all claims for money damages, and for any further relief that this court deems necessary.

Respectfully Submitted,

**SHERIFF DAVID SNYDERS**

By:     */s/Benjamin M. Jacobi*
          One of his attorneys

Benjamin M. Jacobi, #6296811
Lance E. Neyland, #6331171
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Telephone: (847) 291-0200
Facsimile:  (847) 291-9230
bjacobi@okgc.com // lneyland@okgc.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| PEDRO TLAPA CASTILLO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.:  19-CV-50311 |
| v. | ) | |
| | ) | The Honorable Thomas A. Durkin |
| DAVID SNYDERS, Stephenson County Sheriff, | ) | Magistrate Judge Lisa A. Jensen |
| | ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on December 26, 2019 I electronically filed Defendant David Snyders' Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following registered CM/ECF participant(s):

Rebecca K. Glenberg
Roger Baldwin Foundation of ACLU, Inc.
rglenberg@aclu-il.org

**DAVID SNYDERS**

By:  *s/Benjamin M. Jacobi*
      Benjamin M. Jacobi
      Attorney for Defendant
      O'Halloran Kosoff Geitner & Cook, LLC
      650 Dundee Road, Suite 475
      Northbrook, Illinois 60062
      Telephone:  (847) 291-0200
      Facsimile:  (847) 291-9230
      E-mail:  bjacobi@okgc.com