**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THE STATE OF NEW JERSEY; PHILIP D. MURPHY, in his Official Capacity as Governor of New Jersey; GURBIR S. GREWAL, in his Official Capacity as Attorney General of New Jersey,<br><br>Defendants. | Case No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

The United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

### INTRODUCTION

1. In this action, the United States seeks a declaration invalidating, and order permanently enjoining, the enforcement of New Jersey Attorney General Law Enforcement Directive 2018-6, as revised September 27, 2019 (the "Directive"). Ex. 1. The Directive is preempted by federal law and impermissibly discriminates against the United States, thus violating the Supremacy Clause of the United States Constitution.

2. The United States has undoubted, preeminent authority to regulate immigration. This authority is inherent in the United States' status as a sovereign nation and is reflected in the Constitution and numerous acts of Congress. New Jersey has no authority to enforce laws and policies that obstruct or otherwise conflict with federal immigration enforcement efforts.[1]

3. The Directive has both the purpose and effect of obstructing federal immigration enforcement in New Jersey. Specifically, it prevents state, county, and local law enforcement officials from providing the United States with necessary information about individuals in their custody who are subject to removal proceedings or who are being investigated for violations of federal immigration law.

4. The Supremacy Clause does not allow New Jersey to obstruct the enforcement of federal laws that Congress has enacted under its constitutional authority to regulate immigration. The Directive is therefore invalid.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1345.

6. Venue is proper in the District of New Jersey under 28 U.S.C. § 1391(b) because Defendants reside within the District of New Jersey and because a substantial part of the acts or omissions giving rise to this Complaint arose from events occurring within this district.

---

[1] The Directive has the force of law in New Jersey. *See O'Shea v. Twp. of West Milford*, 410 N.J. 371, 381, 982 A.2d 459, 465 (N.J. Super. Ct. App. Div. 2009).

2

7.     The Court has the authority to provide the relief requested under 28 U.S.C. §§ 1651, 2201, and 2202, as well as its inherent equitable powers.

## PARTIES

8.     Plaintiff, the United States, regulates immigration under its constitutional and statutory authorities. It enforces the immigration laws through its Executive Branch agencies, including the Departments of Justice and Homeland Security (DHS). DHS includes the component agencies U.S. Immigration and Customs Enforcement (ICE) and U.S. Customs and Border Protection (CBP).

9.     Defendant State of New Jersey is a state of the United States.

10.    Defendant Philip D. Murphy is the Governor of the State of New Jersey and is being sued in his official capacity.

11.    Defendant Gurbir S. Grewal is the Attorney General for the State of New Jersey and is being sued in his official capacity.

## FEDERAL IMMIGRATION LAW

12.    The Government of the United States has "broad, undoubted" inherent power as a sovereign nation, and enumerated constitutional and statutory power, to regulate matters pertaining to immigration and the status of aliens. *Arizona v. United States*, 567 U.S. 387, 394 (2012) (citing *Toll v. Moreno*, 458 U.S. 1 (1982)); *Fong Yue Ting v. United States*, 149 U.S. 698, 707 (1893) ("The right of a nation to expel or deport foreigners who have not been naturalized, or

taken any steps towards becoming citizens of the country . . . is as absolute and unqualified, as the right to prohibit and prevent their entrance into the country.").

13.     The Constitution affords Congress the power to "establish an uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3, and affords the President of the United States the authority to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3.

14.     The Supremacy Clause of the Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, a state enactment is invalid if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941), or if it "discriminate[s] against the United States or those with whom it deals," *South Carolina v. Baker*, 485 U.S. 505, 523 (1988).

15.     Based on its enumerated powers and its constitutional power as a sovereign to control and conduct relations with foreign nations, the United States has broad authority to establish immigration laws, the execution of which the States cannot obstruct or discriminate against. *See Arizona v. United States*, 567 U.S. 387, 394-95 (2012); *accord North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality); *id.* at 444-47 (Scalia, J., concurring).

16.     Congress has exercised its authority to make laws governing the admission, presence, status, and removal of aliens within the United States by enacting various provisions

of the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, the Immigration Reform and Control Act of 1986 (IRCA), Pub. L. No. 99-603, 100 Stat. 3359, codified at 8 U.S.C. § 1324a *et seq.*, and other laws regulating immigration.

17. These laws codify the Executive Branch's authority to inspect, investigate, arrest, detain, and remove aliens who are suspected of being, or found to be, removable from the United States under the immigration laws. *See* 8 U.S.C. §§ 1182, 1225, 1226, 1227, 1228, 1231, 1357.

18. Congress also has codified basic principles of cooperation and comity between state and local authorities and the United States. For example, the Federal Government allows states to assume custody over removable aliens who have been convicted of state or local offenses. *See id.* § 1231(a)(4)(A). Federal law generally contemplates that such aliens will serve their state or local criminal sentences before being subject to removal, but then will be taken into federal custody upon the expiration of their state prison terms. *See id.* §§ 1226(c), 1231(a)(1)(B)(iii), (a)(4).

19. "Consultation between federal and state officials is an important feature of the immigration system." *Arizona*, 567 U.S. at 411. Congress therefore has directed that a federal, state, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, DHS "information regarding the citizenship or immigration status . . . of an individual." 8 U.S.C. § 1373(a); *see id.* § 1644 (same); *see also id.* § 1357(g)(10)(A) (providing for state and local "communicat[ion] with [DHS]

regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States"). Congress also expressly authorized states and localities "to cooperate with the [Secretary] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." *Id.* § 1357(g)(10)(B).

20. Among the tools DHS uses to facilitate the sort of cooperation that Congress contemplated between law enforcement agencies and federal immigration officials is the "detainer" request. *See* Sample DHS Form I-247A, Ex. 2. Detainers are issued pursuant to the Secretary of Homeland Security's power under 8 U.S.C. § 1103(a)(3), to provide regulations "necessary to carry out his authority," and from DHS's general authority to arrest and detain individuals subject to removal or removal proceedings, 8 U.S.C. §§ 1226 and 1357. *See* 8 C.F.R. § 287.7. The detainer notifies law enforcement officials that DHS has found probable cause that the person subject to the request is a removable alien. *Id.* It then requests that law enforcement officials (1) notify the relevant DHS component at least 48 hours before the alien is released from state/local custody; (2) maintain custody of the individual for a period not to exceed 48 hours beyond the time at which he is expected to be released from custody to allow DHS the opportunity to assume custody; (3) serve the alien with a copy of the detainer; (4) relay the detainer to any other law enforcement agency to whom the alien is transferred; and (5) notify DHS in the event of the alien's death, hospitalization, or transfer. *Id.*

21. DHS performs important law enforcement activities in New Jersey. In Fiscal Year 2018, DHS apprehended about 3,350 aliens in New Jersey. About 88% of those apprehended in Fiscal Year 2018 had past convictions or pending criminal charges. In Fiscal Year 2019, DHS apprehended almost 2,800 aliens in New Jersey. About 85% of those apprehended in Fiscal Year 2018 had past convictions or pending criminal charges.

### NEW JERSEY ATTORNEY GENERAL LAW ENFORCEMENT DIRECTIVE 2018-6

22. On November 29, 2018, the New Jersey Attorney General issued the Directive, which took effect on March 15, 2019 and was revised on September 27, 2019. The Directive limits state and local cooperation with "federal immigration authorities" in a number of important ways. Directive § II.B.

23. The Directive expressly prohibits, except in narrow circumstances, certain information sharing absent a "valid judicial warrant or other court order." *See* Directive § II.C.

24. The Directive also prohibits New Jersey law enforcement agencies from "[p]roviding notice of a detained individual's upcoming release from custody" to assist "federal immigration authorities when the sole purpose of that assistance is to enforce federal civil immigration law." Directive § II.B.5. The Directive contains several limited exceptions if the detainee is charged with, or been convicted of, a narrow subset of crimes or "is subject to a Final Order of Removal that has been signed by a federal judge and lodged with the county jail or state prison where the detainee is being held." *Id.*

25. On information and belief, New Jersey does not impose this restriction on federal authorities when they are engaged in activities other than immigration enforcement, nor does it impose the restriction on other government authorities.

26. If a "federal civil immigration authorit[y] request[s]" to "be notified of the detainee's upcoming release from custody," or to "continue detaining the detainee past the time he or she would otherwise be eligible for release," the Directive requires New Jersey agencies to "promptly notify a detained individual, in writing and in a language the individual can understand." Directive § VI.A.

27. On information and belief, New Jersey does not require notification to a detainee if another agency or the general public, as applicable, seeks to be notified of the detainee's upcoming release from custody, or continue detaining the detainee past the time he or she otherwise would be eligible for release.

### INTERFERENCE WITH, AND DISCRIMINATION AGAINST, FEDERAL IMMIGRATION AUTHORITIES

28. The Directive impermissibly prohibits or restricts basic cooperation with federal officials and discriminates against federal immigration authorities.

29. Federal law contemplates that removable aliens who violate state law will be taken into state custody and complete their state sentences before being detained by the United States and that federal immigration detention for immigration proceedings or for removal will begin upon such an alien's release from state custody. 8 U.S.C. § 1226(c); § 1231(a)(4). The Directive conflicts with federal law by prohibiting state, county, and local officials from notifying federal

8

immigration officials when a detained individual is scheduled to be released from state custody, absent certain narrow exceptions.[2] See Directive § II.B.5.

30. The Directive further conflicts with federal law by forbidding state, county, and local law enforcement officials from communicating with federal immigration officials about transfers of detained aliens to federal custody. Since issuance of the Directive, New Jersey law enforcement agencies, with limited exceptions, have not communicated to DHS the release date or home address of individuals that DHS has reason to believe are aliens removable from the United States. See Directive §§ II.B.2, II.B.5. Nor have New Jersey law enforcement agencies transferred such aliens to DHS custody, even where DHS presents a civil administrative warrant of arrest or removal—the arrest mechanism that Congress elected to codify into federal law, which does not require separate authorization or approval of a federal judge. See 8 U.S.C. §§ 1226(a), 1231(a).

31. By restricting information sharing and thus hindering the transfer to DHS of aliens in state, county, or local custody upon their release through the means provided for by federal law, the Directive effectively requires federal immigration officers either to engage in difficult

---

[2] Section II.B.5. of the Directive allows three exceptions: (1) if the detainee has been charged or convicted of a violent or serious offense; (2) if, in the past five years the detainee was convicted of an indictable crime other than a violent or serious offense; and (3) if there is a Final Order of Removal signed by a federal judge. Other narrow exceptions also apply. See Directive § II.C. Even with the enumerated exceptions, however, "nothing in th[e] Directive prohibits state, county, and local law enforcement agencies from imposing their own additional restrictions on providing assistance to federal immigration authorities so long as those restrictions do not violate federal or state law or impede the enforcement of state criminal law." Directive at 2.

9

and dangerous efforts to re-arrest aliens who previously were in state, county, or local custody—endangering immigration officers, the alien at issue, and others who may be nearby. Alternatively, the Directive creates a situation where federal immigration officers may determine that it is not appropriate to transfer an alien to state, county, or local custody in the first place, in order to comply with their mission to enforce the immigration laws.

32. Moreover, the Directive's notification requirements, *see* Directive § VI.A, serve to alert aliens that "federal civil immigration authorities" may be interested in detaining them, thus further thwarting DHS's ability to take such aliens into custody, forcing DHS to engage in difficult and dangerous efforts to re-arrest aliens who previously were in state custody, and endangering immigration officers, the alien at issue, and others who may be nearby. New Jersey has no lawful interest in assisting removable aliens to evade federal law enforcement.

33. The Directive's restrictions discriminate against federal immigration authorities because they do not apply to other federal authorities, state agencies or, as applicable, the general public.

34. Since enactment of the Directive, on November 29, 2018, and its subsequent revision, on September 27, 2019, federal immigration enforcement activities have been negatively impacted in New Jersey.

35. The lack of cooperation fostered by the Directive has resulted in federal agents' requests for assistance being unanswered by local law enforcement, prompting officer and public safety concerns and a reallocation of ICE resources to protect federal agents in the field.

36. On multiple occasions in 2019, New Jersey law enforcement agencies did not provide DHS with the latest information regarding the release dates and times for aliens (or suspected aliens) who were convicted or charged with crimes including fraud, terroristic threats, and invasion of privacy.

37. Between Fiscal Year 2018 and Fiscal Year 2019, the number of aliens apprehended by ICE in New Jersey decreased by 16%. Among the aliens that were apprehended, 88% were either convicted criminals or had pending criminal charges.

## COUNT ONE
*Preemption*

38. The United States realleges and incorporates by reference the allegations contained in paragraphs 1 through 37 of this Complaint.

39. Sections II.B.5 and VI.A of the Directive violate the Supremacy Clause because they are preempted by federal law.

## COUNT TWO
*Violation of Intergovernmental Immunity*

40. The United States realleges and incorporates by reference the allegations contained in paragraphs 1 through 37 of this Complaint.

41. Sections II.B.5 and VI.A of the Directive violate the Supremacy Clause by obstructing federal immigration operations and discriminating against federal immigration authorities.

## PRAYER FOR RELIEF

The United States respectfully requests that this Court:

1. Enter a judgment declaring that the Directive violates the Supremacy Clause and is therefore invalid;

2. Permanently enjoin Defendants, as well as their successors, agents, and employees, from enforcing the Directive;

3. Award the United States its costs in this action; and

4. Award any other relief this Court deems just and proper.

DATED: February 10, 2020                    Respectfully submitted,

                                                  JOSEPH H. HUNT
Assistant Attorney General

CRAIG CARPENITO
United States Attorney

ALEXANDER K. HAAS
Director, Federal Programs Branch

JACQUELINE COLEMAN SNEAD
Assistant Director, Federal Programs Branch

*/s/   Joseph J. DeMott*
JOSEPH J. DEMOTT
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Tel: (202) 514-3367
E-mail: joseph.demott@usdoj.gov

*Counsel for the United States*

13