**EXHIBIT C**

U.S. Department of Homeland Security
Washington, DC 20528



# GUIDANCE ON STATE AND LOCAL GOVERNMENTS' ASSISTANCE IN IMMIGRATION ENFORCEMENT AND RELATED MATTERS

**Summary**

The Department of Homeland Security (DHS) provides this guidance on assistance furnished by state and local law enforcement officers to DHS in its enforcement of the Nation's immigration laws. This guidance primarily concerns assistance by such officers in the enforcement of the civil provisions of the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1101 *et seq.*, specifically, cooperation in the identification, apprehension, detention, and removal of aliens who are unlawfully present. In light of laws passed by several states addressing the involvement by state and local law enforcement officers in federal enforcement of immigration laws, DHS concluded that this guidance would be appropriate to set forth DHS's position on the proper role of state and local officers in this context.

DHS has long viewed state and local governments as valuable partners that can serve a helpful role in assisting DHS in fulfilling its responsibilities with respect to immigration enforcement. DHS continues to welcome that participation and does not intend by this guidance to disturb the longstanding pattern of cooperation on a day-to-day basis with state and local law enforcement agencies. For a state or local government to act systematically[1] on a matter that affects immigration enforcement, however, that action has to be consistent with the comprehensive regulatory regime of the INA, which requires such state enforcement efforts to constitute cooperation, and therefore also requires such efforts to be responsive to the policies and priorities set by DHS.

This guidance first sets out general legal principles that govern the respective roles of the Federal Government and the states in immigration matters. It then discusses the specific provisions of the INA that address the manner in which state and local officers may assist DHS in immigration enforcement. The guidance explains that systematic state or local government actions will conflict with the INA with respect to the identification, apprehension, detention, and removal of aliens if state or local law enforcement officers do not act in accordance either with a statutory provision or agreement with DHS providing them with express authority for their actions, or with 8 U.S.C. § 1357(g)(10)(B), which authorizes state and local governments to "*cooperate* with the [Secretary of Homeland Security] in the identification, apprehension,

---

[1] In referring to "systematic" actions of state and local governments, we mean regular or repeated activity that is undertaken pursuant to or consistent with some governing principles or standards, whether formal or informal—such as state or local laws, written or unwritten agency policy, training guidelines, or standard operating procedures. The term "systematic" is intended to be in contrast with occasional, sporadic, or irregular activity that may happen from time to time in an official's discretion or as the need arises in the course of an official's regular duties.

1

detention, or removal of aliens not lawfully present in the United States" (emphasis added). Under that provision, a state or local government's action must constitute genuine *cooperation* with DHS to avoid infringing on the Federal Government's authority. Applying that basic requirement, the guidance provides non-exhaustive lists of examples of state and local government actions related to immigration enforcement that are permissible and examples that would infringe on the Federal Government's authorities and discretion.[2]

I.   **GENERAL LEGAL PRINCIPLES**

   A.   **Responsibilities of the Federal Government over Immigration**

Congress's power over immigration and naturalization derives from the U.S. Constitution's Commerce Clause, U.S. Const. Art. I, § 8, cl. 3, related constitutional authorities concerning foreign relations, and its power to "establish an uniform Rule of Naturalization." U.S. Const. Art. I, § 8, cl. 4. Authority to regulate immigration and matters concerning aliens in or seeking to enter the United States is vested with the Federal Government. *See, e.g.*, *Toll v. Moreno*, 458 U.S. 1, 10 (1982); *De Canas v. Bica*, 424 U.S. 351, 354 (1976). Control of immigration is a "fundamental sovereign attribute." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 210 (1953). As the Supreme Court has explained, the Nation's immigration policy "is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations [and] the war power," and "so exclusively entrusted to the political branches" of the National Government as "to be largely immune from judicial inquiry or interference." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1962).

The primary means by which the Federal Government exercises this authority is through the INA, which is a comprehensive statute that addresses virtually all matters related to immigration.[3] *See Chamber of Commerce v. Whiting*, 131 S. Ct. 1968, 1973 (2011) (the INA "established a 'comprehensive federal statutory scheme for regulation of immigration and naturalization' and set 'the terms and conditions of admission to the country and the subsequent treatment of aliens lawfully in the country'" (quoting *De Canas*, 424 U.S. at 353, 359)); *Elkins v. Moreno*, 435 U.S. 647, 664 (1978) (describing the INA "as a comprehensive and complete code covering all aspects of admission of aliens to this country").

---

[2] Given its statutory and regulatory authority over immigration and naturalization matters, as well as its longstanding experience and expertise in enforcing the Nation's immigration laws, DHS is uniquely situated to interpret the INA and determine what actions assist and what actions undermine its efforts. DHS accordingly issues this memorandum pursuant to the Secretary's authority to issue such instructions and to take such other actions as she deems necessary for carrying out her authority in the enforcement of laws relating to the immigration and naturalization of aliens. 8 U.S.C. § 1103(a)(3).

[3] This is not to suggest that the INA is the only statute by which the Federal Government has exercised its authority to regulate immigration or matters concerning aliens. Various other federal statutes address discrete aspects related to aliens and immigration. Although the focus of this guidance is on the INA because it is the primary statute in this field, the background principles discussed in this introduction are equally applicable to other federal laws that concern aliens and immigration. *Cf*. 8 U.S.C. § 1101(a)(17) (defining the term "immigration laws" as including the INA "and all laws, conventions, and treaties of the United States relating to the immigration, exclusion, deportation, expulsion, or removal of aliens").

The INA allocates various responsibilities for its implementation and enforcement to the President and a number of Executive Branch officials, including the Secretary of Homeland Security, the Attorney General, and the Secretary of State. *See* 8 U.S.C. § 1103(a)(1); *Sale v. Haitian Centers Council, Inc.*, 508 U.S. 155, 171-72 (1993) (noting, in a pre-DHS case, distribution of authority under the INA to various federal officials). The Secretary of Homeland Security is responsible, among other duties, for enforcing the civil provisions of the INA, including those involving the investigation, arrest, and detention of aliens who are subject to removal; for instituting and prosecuting removal proceedings before the Department of Justice's Executive Office for Immigration Review (EOIR); for the actual removal of aliens; for developing and implementing national immigration policies and priorities; and for assisting the Attorney General in enforcing the criminal provisions of the INA. *See* 8 U.S.C. § 1103(a)(1); *see also* 6 U.S.C. §§ 202(5) (providing DHS with the authority to "establish[] national immigration enforcement policies and priorities"); 271(a)(3)(D) (providing DHS with the authority to "establish national immigration services policies and priorities").

The INA's text and underlying congressional intent reveal a complex and multi-faceted set of objectives relating to various aspects of the immigration and naturalization system. The Federal Government has not adopted a one-dimensional focus in which the sole considerations for those who violate restrictions related to the entry and presence of aliens are removal, sanctions, or both. To be sure, removal and sanctions are significant elements of the purposes and objectives as defined by Congress and DHS. *See, e.g.*, 8 U.S.C. §§ 1182(a)(6)(A) (providing ground of removability for aliens who are present in the United States without being admitted or paroled); 1227(a)(1)(B) (providing ground of removability for aliens who are present in the United States in violation of law after being admitted); 1325 (providing criminal prohibition for aliens entering or attempting to enter the United States in violation of law). But these ends are to be pursued consistently and simultaneously with several others. For example, the Federal Government seeks to be welcoming to those aliens who are in the United States legally and to protect them from undue harassment. *See Hines v. Davidowitz*, 312 U.S. 52, 73 (1941). Even for those aliens present in the United States without lawful immigration status, the Federal Government has extended various humanitarian protections. *See, e.g.*, 8 U.S.C. §§ 1158 (asylum); 1254a (temporary protected status); 1227(a)(1)(E)(iii) (humanitarian waiver of deportability to assure family unity); 1229b(b) (cancellation of removal); 1182(d)(5) (parole); 1101(a)(15)(T) (visas for certain victims of human trafficking); and 1101(a)(15)(U) (visas for certain victims of criminal activity who have suffered substantial physical or mental abuse). In its administration and enforcement of the INA, DHS also may properly consider issues of foreign relations, as well as the potential impact of certain enforcement techniques or initiatives on citizens and lawfully present aliens or on federal, state, and local law enforcement efforts under other laws. DHS's administration and enforcement of the INA necessarily reflect and embody these multiple and sometimes competing goals. Moreover, DHS must act within the constraints of limited resources and therefore must carefully prioritize its efforts in order to carry out its mandate.[4]

---

[4] *See, e.g.*, Memorandum from John Morton, Director, U.S. Immigration and Customs Enforcement, titled "Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention, and Removal of Aliens" (June 17, 2011), available at http://www.ice.gov/doclib/secure-communities/pdf/prosecutorial-discretion-memo.pdf; Memorandum from John Morton, Director, U.S. Immigration and Customs Enforcement, titled "Civil Immigration

Whenever authority to enforce *any* Act of Congress is assigned to officers of the Executive Branch, the responsible officers are understood to be vested with broad and presumptively unreviewable discretion in deciding whether and how to enforce the Act in given circumstances. That is true whether the agency is invoking criminal, civil, or administrative process. *See, e.g.*, *Heckler v. Chaney*, 470 U.S. 821, 831-32 (1985). The Supreme Court has recognized that prosecutorial discretion is especially important in the immigration enforcement context. *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 489 (1999) (observing that prosecutorial discretion has long been "a special province of the Executive," and finding that the considerations underlying such prerogative "are greatly magnified in the deportation context"); *see also United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) (noting that discretion is essential in the administration of the immigration laws, as "flexibility and the adaptation of the congressional policy to infinitely variable conditions constitute the essence of the program"); *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 522-24 (BIA 2011) (discussing the broad authority DHS has in exercising its prosecutorial discretion in initiating removal proceedings). By charging DHS with primary responsibility for enforcement of federal immigration laws, Congress intended for DHS to use its expertise in calibrating its actions so as to ensure the varied and sometimes competing objectives involved in immigration are appropriately balanced.

Consistent with the broad range of enforcement discretion infused in the INA, U.S. Immigration and Customs Enforcement (ICE) agents and officers, U.S. Customs and Border Protection (CBP) agents and officers, and U.S. Citizenship and Immigration Services (USCIS) officers appropriately exercise discretion in their daily activities in the field. DHS agents, officers, and attorneys also exercise discretion in deciding whether to institute charges against an alien or what charges to bring, whether to oppose applications for discretionary relief, and whether and when to execute a removal order. These and other exercises of discretion by ICE, CBP, and USCIS agents and officers are, of course, subject to the supervision and control of superior DHS officials and, ultimately, the Secretary.

### B. General Principles Governing Assistance by State and Local Officers in Immigration Enforcement

DHS has long viewed state and local governments as valuable partners that can provide meaningful assistance to DHS with respect to immigration matters. Although only the Federal Government may establish national immigration policy and the comprehensive schemes for administering and enforcing that policy, state and local governments undoubtedly have legitimate interests in certain matters concerning aliens and retain, under their reserved powers, some authority to act on certain matters that may affect aliens and immigration. *See De Canas*, 424 U.S. at 355 (acknowledging that not "every state enactment which in any way deals with aliens is a regulation of immigration and thus per se pre-empted by [the Federal Government's] constitutional power, whether latent or exercised."). State governments do not have authority, however, to directly regulate aliens and immigration, *id.* at 358, such as by determining which

---

Enforcement: Priorities for the Apprehension, Detention, and Removal of Aliens" (Mar. 2, 2011), available at http://www.ice.gov/doclib/news/releases/2011/110302washingtondc.pdf.

4

aliens may be admitted to the United States or by setting the terms and conditions under which those aliens may remain. Moreover, state and local governments must be careful to ensure that their actions do not infringe upon the comprehensive regulatory regime of the INA. For a state or local government to act on a matter that affects aliens and immigration, that action cannot interfere with the Federal Government's authority to administer the INA.

The Constitution assigns responsibility for the regulation of immigration to the National Government because it concerns not a single state, but an aspect of the external relations of the Nation as a whole—in particular, the admission and treatment in the United States of the citizens or subjects of other nations. As with other matters concerning the Nation's external relations, the actions of "a single State" "can, at her pleasure, embroil us in disastrous quarrels with other nations." *Chy Lung v. Freeman*, 92 U.S. 275, 280 (1875). For "[e]xperience has shown that international controversies of the gravest moment, sometimes even leading to war, may arise from real or imagined wrongs to another's subjects inflicted, or permitted, by a government." *Hines*, 312 U.S. at 64. Reflecting these sensitivities, states also may not effect the "[l]egal imposition of distinct, unusual and extraordinary burdens and obligations upon aliens" or those believed to be aliens. *Id.* at 65-66.

Under the Supremacy Clause of the U.S. Constitution, U.S. Const. Art. VI, cl. 2, the judgments of the Federal Government in the execution of federal law must prevail over those of the states. *See City of New York v. United States*, 179 F.3d 29, 35 (2d Cir. 1999) (finding that two governments "cannot work without informed, extensive, and cooperative interaction of a voluntary nature between sovereign systems for the mutual benefit of each system. . . . The potential for deadlock . . . inheres in dual sovereignties, but the Constitution has resolved that problem in the Supremacy Clause . . . ."). Accordingly, to the extent that state or local involvement in a federal area is appropriate, such involvement must be consistently cooperative with federal efforts. In fact, in the long experience of DHS (and the Immigration and Naturalization Service before it), the on-the-ground assistance rendered by state and local governments to federal immigration enforcement officers has often been of this cooperative nature, with the former deferring to federal officers in deciding whether or how to proceed under the INA in particular cases or with respect to particular aliens when questions arise. That relationship is also reflected in the formation of task forces that include DHS officers and state and local law enforcement officers, such as Border Enforcement Security Task Forces (BESTs). It is also found in more informal, flexible interactions where state and local law enforcement assist federal authorities in issues related to immigration enforcement that arise through their routine local law enforcement duties. Where state and local officers and DHS officers work closely together, often along the U.S. border, state and local officers are responsive to the requests, needs, and guidance of the federal agency.[5]

---

[5] The Federal Government may, at times, take a secondary, supporting role to a state enforcement effort that is primarily aimed at enforcing state law. State and local law enforcement officers may seek assistance in a state-led operation aimed at carrying out a state's own police powers, but request DHS assistance based on the knowledge that they may encounter an immigration issue in the course of that operation. Where DHS assists in these situations, DHS may take a secondary role in the overall operation, but the primary and lead role on any federal immigration issues encountered in the course of the operation.

As explained below, these principles regarding the relationship between DHS and state and local officers in the enforcement of federal immigration law are embodied in the INA itself.

## II. INA PROVISIONS SPECIFICALLY GOVERNING SYSTEMATIC ASSISTANCE BY STATE AND LOCAL OFFICERS

As noted above, DHS has long viewed state and local governments as valuable partners that can provide meaningful assistance to DHS in fulfilling its responsibilities with respect to enforcing the immigration laws. Those governments, however, must be careful to ensure that their actions do not infringe upon the comprehensive regulatory regime of the INA, including its vesting of enforcement authority and discretion in the Secretary, or upon the Federal Government's constitutional authority over foreign affairs. That is especially true with respect to the identification, apprehension, detention, and removal of aliens not lawfully present in the United States.[6]

### A. The General Statutory Framework Governing Assistance by State and Local Officers and Employees

The basic premises of the relationship between federal officials and state and local law enforcement officers are embodied in federal law, which identifies and defines the role of state and local officers who assist federal officers in the identification, apprehension, detention, and removal of aliens under the INA. Congress has explicitly authorized state and local law enforcement officers to participate in enforcement actions in specified circumstances. *See, e.g.*, 8 U.S.C. §§ 1324(c) (providing that arrests for violation of the INA's criminal prohibitions against smuggling, transporting or harboring aliens may be made not only by federal immigration officers, but also by "all other officers whose duty it is to enforce criminal laws"); 1252c (authorizing state and local law enforcement officials to arrest aliens who are unlawfully present in the United States and were previously removed after being convicted of a felony but only if they have confirmed the status of such aliens with ICE); 1103(a)(10) (granting power to DHS to authorize state and local law enforcement officers, when an "actual or imminent mass influx of aliens . . . presents urgent circumstances requiring an immediate Federal response," to perform functions of federal immigration officers). Outside of such specific authorizations, 8 U.S.C. § 1357(g), entitled "Performance of immigration officer functions by State officers and employees," recognizes two additional avenues for state and local law enforcement officers to provide assistance to federal officials in enforcing the INA and identifies the permissible contours of that assistance.[7]

First, 8 U.S.C. § 1357(g) allows DHS to enter into a written agreement with a state or a

---

[6] As the focus of this guidance is on state government actions related to the enforcement of restrictions imposed by the Federal Government on which aliens may enter the United States and the conditions under which aliens are permitted to remain, we do not address provisions in federal law concerning the authority of state governments to take actions relating to the grant or denial of certain benefits, services, or privileges to particular classes of aliens.

[7] In addition to authorizing cooperation between state and local law enforcement and federal officials on immigration enforcement, Congress has also specifically prohibited state or local governments from restricting communication with the Federal Government regarding immigration status of individuals. *See* 8 U.S.C. §§ 1373(a)-(b); 1644.

6

political subdivision, to enlist its voluntary assistance in the performance of various tasks relating to the "investigation, apprehension, or detention of aliens in the United States." 8 U.S.C. § 1357(g)(1). Where this process is utilized, the state or political subdivision's officers' activities are limited both by the terms of the agreement—a so-called "287(g) Agreement"—and by the INA itself, which, among other conditions, requires that the state and local law enforcement officers who are conducting immigration enforcement operations are "qualified to perform a function of an immigration officer," have "knowledge of, and adhere to, Federal law relating to the function," and "have received adequate training regarding the enforcement of relevant Federal immigration laws." 8 U.S.C. § 1357(g)(1) and (2). Just as critically, all functions performed under a 287(g) Agreement "shall be subject to the direction and supervision of the [Secretary]." 8 U.S.C. § 1357(g)(3). Exercising its authority under subsection 1357(g), DHS has entered into cooperative agreements with more than 60 state and local law enforcement agencies to allow appropriately trained and supervised state and local officers to perform enumerated immigration-related functions. These agreements have been designed to ensure that those officers exercise immigration enforcement authority in a manner that is consistent with the multi-faceted federal objectives and priorities, and do so under federal supervision to preserve the flexibility and discretion called for under federal law.

Second, paragraph (10) of subsection 1357(g) allows state and local officers to participate in certain aspects of the enforcement of immigration laws outside of a formal written agreement, through formal or informal "cooperat[ion] with the [Secretary]." Paragraph (10) states:

> Nothing in this subsection shall be construed to require an agreement under this subsection in order for any officer or employee of a State or political subdivision of a State -- (A) to communicate with the [Secretary] regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States; or (B) otherwise to cooperate with the [Secretary] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States.

As contemplated by this provision, DHS has invited and accepted the assistance of state and local law enforcement personnel in a variety of contexts that lie outside of the written agreements provided for by paragraphs (1) - (9) of subsection 1357(g), such as through BESTs, the Criminal Alien Program, Fugitive Operations Task Forces, and Operation Community Shield. Moreover, state and local law enforcement officers render assistance to DHS on a case-by-case basis as immigration matters come to their attention in the performance of their regular duties under state or local law.

Through these and other cooperative arrangements, state and local governments have been able to assist DHS in a manner that conforms to DHS's balanced administration of a complex immigration scheme and that is consistent with DHS's specific priorities and approach. In the next section, this memorandum elaborates upon the meaning of this requirement for state and local officers and employees to "cooperate" with the Secretary.

### B. Interpretation of "Cooperate"

Under the INA, an officer or employee of a state or political subdivision of a state may,

7

without a written agreement with the Department, "cooperate with the [Secretary] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." 8 U.S.C. § 1357(g)(10)(B). The term "cooperate" is not defined in Section 1357, but the content of the term follows from federal primacy in the administration and enforcement of the immigration laws and from the text and overall structure of the INA. Based on those sources, the Department interprets the term "cooperate" in subparagraph 1357(g)(10)(B) to mean **the rendering of assistance by state and local officers to federal officials, in the latter officials' enforcement of the INA, in a manner that maintains the ability to conform to the policies and priorities of DHS and that ensures that individual state and local officers are at all times in a position to be—and, when requested, are in fact—responsive to the direction and guidance of federal officials charged with implementing and enforcing the immigration laws.**

### 1. Cooperation Requires Federal Primacy in Immigration Enforcement

Consistent with the Constitution's vesting of authority over immigration policy and regulation with the Federal Government and Congress's vesting of enforcement authority and discretion with the Secretary, DHS must have exclusive authority to set enforcement priorities and to determine how best to allocate DHS's resources. Federal primacy also requires that DHS be able to effectuate the enforcement discretion that the INA vests in the Secretary, and that state and local law enforcement officers systematically assisting DHS in enforcing the INA be in a position to conform to and effectuate that discretion as well. The INA's "cooperation" requirement means that a state or local government may not adopt its own mandatory set of directives to implement the state's own enforcement policies, because such a mandate would serve as an obstacle to the ability of individual state and local officers to cooperate with federal officers administering federal policies and discretion as the circumstances require. State or local laws or actions that are not responsive to federal control or direction, or categorically demand enforcement in such a way as to deprive the Federal Government—and state and local officers—of the flexibility and discretion that animates the Federal Government's ability to globally supervise immigration enforcement, do not constitute the requisite "cooperation" within the meaning of 8 U.S.C. § 1357(g)(10)(B), even if the state or local government's own purpose is to enforce federal immigration law.

Against this backdrop, for state and local law enforcement officers to "cooperate" with the Secretary (within the meaning of 8 U.S.C. § 1357(g)(10)(B)) in rendering assistance to DHS officers, those officers must at all times be in a position to be—and, when requested, must in fact be—responsive to federal enforcement discretion, and their assistance must be rendered within any parameters set by DHS so that DHS can exercise control over enforcement and has the flexibility to respond to changing considerations.

### 2. The INA Confirms that Where a State or Local Government Would Participate Systematically in the Identification, Apprehension, Detention, or Removal of Aliens, the State or Local Action Must Be Responsive to Federal Direction

The text of the statute makes clear that state and local governments may not adopt and implement their own enforcement programs based on their own assessment of what is

8

appropriate for administering the INA, separate and apart from what the Secretary has established and oversees. Thus, 8 U.S.C. § 1357(g)(10)(B) refers to the states cooperating "*with the [Secretary]*" (emphasis added), the federal officer charged by Congress with the administration of the INA.

The requirement of some measure of federal control is also confirmed by paragraph 1357(g)(10)'s reference to "cooperat[ion]" in the "removal" of aliens not lawfully present. It is clear that state and local officers have no authority to remove an alien from the United States, or to institute or conduct proceedings to that end. Inclusion of this function as part of the four-step enforcement process described in paragraph (10) of Section 1357(g) signifies that nature of "cooperation" that is required with respect to the process as a whole—with the Secretary having the leading and primary role.

This interpretation of "cooperate" is further confirmed by considering the statutory context in which the word "cooperate" appears, as well as the constitutional background against which the INA was enacted (wherein, as explained above, the Federal Government and not the states is assigned responsibility over immigration policy and foreign affairs). Subparagraph 1357(g)(10)(B) concerns cooperation by state and local officers in the "identification, apprehension, detention, [and] removal of aliens not lawfully present in the United States." But this provision is part of a broader statutory scheme that balances this function (*i.e.*, removal of aliens not lawfully present) against numerous complementary or even competing aims, as noted above. When DHS acts to enforce restrictions related to the entry of aliens, it does so respecting these complementary and competing aims. The United States has ongoing relationships with foreign nations and is mindful as to how it exercises its immigration authority because of the potential consequences for those relationships, and because of the potential for foreign governments to take reciprocal or retaliatory measures against U.S. nationals abroad. State and local officers must retain the requisite freedom to conform to the discretion of federal authorities, so that they do not take actions that frustrate federal objectives and discretion and that any actions they do take are consistent with applicable conditions under federal law, regulations, and procedures.

In requiring "cooperation," the INA thus requires that a state or local law enforcement officer who assists DHS officers in their enforcement of the immigration laws must at all times have the freedom to adapt to federal priorities and direction and conform to federal discretion, rather than being subject to systematic mandatory state or local directives that may work at odds with DHS. Although a similar lack of receptiveness to federal priorities might pervade even a system that gives officers discretion, any such state or local government-directed mandate would necessarily function as a parallel or contradictory direction, in competition with the Secretary's direction, as to how to enforce immigration law, thereby eroding the federal government's exclusive authority over immigration enforcement. Where inconsistent with federal priorities, a mandatory directive would force the Federal Government to divert resources away from the enforcement priorities it has set. Even if a state or local mandatory directive matches the federal priorities in place at the time of adoption, federal priorities and the manner in which they are applied can, and do, change. In fact, over the past two years, the federal immigration

enforcement priorities and the manner in which they are applied have been significantly revised.[8] While any mandatory scheme raises these concerns, they are particularly pressing where state or local mandates are codified because such codified laws are by their nature more difficult to adjust to respond to changing priorities of the Federal Government.

### 3. Cooperation is Not Limited to a Particular Form

The Federal Government may work with state and local governments in various ways, as it currently does, so their participation is not restricted to a particular form. The federal oversight role may range from express, direct involvement—such as DHS officers participating in a joint task force with state and local law enforcement officers—to implied, indirect involvement—such as DHS officers sharing information or general advice and guidance with state and local law enforcement officers. The "cooperation" requirement, however, does not necessarily require *ex ante* permission from the Federal Government for state and local law enforcement personnel to assist in immigration enforcement. Paragraph 1357(g)(10) recognizes that formal authorization is not required before every instance of such cooperation. And the INA's requirement that the assistance rendered by state and local officers be cooperative or responsive to federal priorities and exercise of discretion likewise does not require affirmative authorization in advance or federal involvement in every single act of assistance. DHS may choose to confine its role simply to establishing a general program under which a state or local officers may act repeatedly in a manner that is consistent with that program and with the policy or direction set by the Federal Government as it relates to the program. And DHS may elect to invite and accept—as it traditionally has—individual instances of assistance by state and local officers that arise out of the performance of their regular duties under state and local law.

But to constitute genuine cooperation as contemplated by 8 U.S.C. § 1357(g)(10), state or local governments must not systematically act in a way that conflicts with the policies or priorities set by the Federal Government or limits the ability of the Federal Government to exercise discretion under federal law whenever it deems appropriate. States may not act with the aim or effect of altering the Federal Government's prioritization or balancing of different goals—such as by effectively compelling the Federal Government to address certain ends or by furthering those ends while disregarding others, or by attempting to frustrate the Federal Government's accomplishment of one end to advance other ends. In other words, when states attempt to act in the immigration arena, their actions cannot disrupt or interfere with the Federal Government's pursuit of its multiple, interrelated goals. Rather, for those actions to qualify as cooperation, they must assist the Federal Government in accomplishing its goals.

---

[8] *See, e.g.*, Memorandum from John Morton, Director, U.S. Immigration and Customs Enforcement, titled "Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention, and Removal of Aliens" (June 17, 2011), available at http://www.ice.gov/doclib/secure-communities/pdf/prosecutorial-discretion-memo.pdf; Memorandum from John Morton, Director, U.S. Immigration and Customs Enforcement, titled "Civil Immigration Enforcement: Priorities for the Apprehension, Detention, and Removal of Aliens" (Mar. 2, 2011), available at http://www.ice.gov/doclib/news/releases/2011/110302washingtondc.pdf.

### 4. Communication with the Federal Government About Immigration Status

The provisions of the INA addressing communications by state and local officers with DHS are consistent with and reinforce the foregoing interpretation of "cooperate." Communications between state and local officers and the Secretary regarding the immigration status of an individual are addressed by both 8 U.S.C. § 1357(g)(10)(A) and 8 U.S.C. § 1373. State and local actions pursuant to these provisions that are taken in connection with assisting DHS in enforcement of federal immigration laws—and specifically, in connection with assisting DHS in the identification, apprehension, detention, or removal of unlawfully present aliens—as distinguished from the state or local government's own purposes, must, like actions taken pursuant to 8 U.S.C. § 1357(g)(10)(B), be done in "cooperation" with the Secretary. Neither provision gives state or local officials authority to use these communications in a systematic manner for the investigation and apprehension of aliens in ways that are not coordinated with and responsive to federal priorities and discretion.

Subparagraph (10)(A) of subsection 1357(g) permits state and local officers "to communicate with the [Secretary] regarding the immigration status of an individual, including reporting knowledge that a particular alien is not lawfully present in the United States." This provision must be read in light of subparagraph 1357(g)(10)(B), which immediately follows and provides for state and local officers to "*otherwise* cooperate" with the Secretary, without a written agreement. Because the INA thus deems communications referred to in subparagraph (A) to be another form of "cooperation" of the sort referred to in subparagraph (B), the interpretation of "cooperate" set forth above applies equally to communications by state and local officers on immigration status (made pursuant to subparagraph 1357(g)(10)(A)) as it does to other state and local efforts to participate "in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States" (pursuant to subparagraph 1357(g)(10)(B)).

Section 1373 recognizes state authority to request information from the Federal Government "regarding the immigration status, lawful or unlawful, of any individual," and further obligates DHS to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information." 8 U.S.C. § 1373(b)-(c). Section 1373 thus permits state and local governments to make inquires on specific aliens and requires DHS to respond to such individual requests.

Section 1373 was enacted by Congress at the same time as paragraph 1357(g)(10), *see* Omnibus Consolidated Appropriations Act, 1997, Pub. L. 104-208, §§ 133, 642 (1996), and therefore the two provisions should be read consistently with each other. *See Wood v. A. Wilbert's Sons Shingle & Lumber Co.*, 226 U.S. 384, 389 (1912) (separate parts of the same enactment should be read as to not conflict and should be construed such that "each [part has] its proper application, distinct from and harmonious with that of the other."). When these provisions are read together, 8 U.S.C. § 1373 ensures that no external restriction on the communications between government entities will prevent state and local officers from cooperatively assisting the Federal Government under 8 U.S.C. § 1357(g)(10). *See* 8 U.S.C. § 1373(a)-(b).

Further, a state or local government may use the procedures described by subsection 1373(c) to promote *bona fide* state interests—for example, investigating identity fraud or ensuring eligibility for certain state benefits. But when a state or local government utilizes section 1373 to systematically assist in the "identification, apprehension, detention, or removal of aliens not lawfully present in the United States," such assistance efforts must be "cooperative" pursuant to the requirements of paragraph 1357(g)(10). In other words, while state and local governments are authorized under section 1373 to inquire into immigration status on individual cases, state and local governments cannot mandate the use of the procedures described by that section for purposes of enforcing the INA's immigration provisions in a manner that conflicts with policies and priorities of DHS. Any such state-directed mandate would function as direction designed to compete with the Secretary's direction as to how to enforce immigration law, thereby impermissibly challenging the Federal Government's exclusive authority over immigration enforcement, interfering with federal enforcement discretion, and forcing the Federal Government to divert resources away from the enforcement priorities it has set.

Finally, there is an important distinction between communication of alien-status information between a state or local government and DHS, and the original acquisition of information by the state or local officer from an individual. The terms "[t]o communicate" and "report" in 8 U.S.C. 1357(g)(10)(A) encompass only the specific act of exchanging information with DHS; that provision does not, in itself, provide a state or local officer with additional authority to investigate an individual's immigration status so as to acquire information that might be communicated to DHS. Nor does 8 U.S.C. § 1373, by itself, provide the state or local officers with that additional authority. A state or local officer's ability to acquire such information as to immigration status, therefore, must derive from another source – for example, when the officer is acting pursuant to a written agreement or otherwise in cooperation with the Secretary under 8 U.S.C. § 1357(g), or when the officer learns of information incidentally in the performance of regular police functions.

### III. PRACTICAL APPLICATION

To better illustrate the application of the principles discussed above, including the definition of the term "cooperate" in 8 U.S.C. § 1357(g)(10)(B) and the general immigration and preemption principles under which this statutory provision operates, below are some examples of state and local government actions categorized based on whether they are permissible or whether they would infringe on the Federal Government's authorities. In reviewing this list, there are several critical factors to bear in mind.

First, this is a *non-exhaustive* list that is intended to provide a select few examples of the above guidance in practice. The fact that a state or local government's contemplated actions do not have an analogue on this list does not have any bearing on whether such actions would be permissible cooperation or impermissible.

Second, a state and local government's actions always *must be considered in their precise context*. The below examples are hypotheticals that are divorced from any particular state or local statutory regime or operational practice. Merely because a state or local government takes some action that bears a resemblance to one of the examples below does not mean that the

12

Federal Government may not reach the opposite conclusion as to the permissibility of that state or local action based on the exact wording and structure of the statute in question, the relationship of that state or local action to other state or local actions, the impact of that state or local action on U.S. foreign affairs, or the means by which the state or local government acts in practice.

Third, the definition of "cooperate" in 8 U.S.C. § 1357(g)(10)(B) as described above controls, not the examples below. A state or local government's actions must **maintain the ability to conform to the policies and priorities of DHS and ensure that individual state and local officers are at all times in a position to be—and, when requested, are in fact—responsive to the exercise of direction and guidance of the federal officials charged with implementing and enforcing the immigration laws.**

    **A.**    **Cooperation and Other Permissible Actions**

- State and local law enforcement officers participating in joint task forces with DHS immigration officers (among other possible U.S. and international partners), where one purpose of the task force includes identifying and apprehending individuals suspected of being in violation of federal immigration law.

- State and local law enforcement officers providing assistance to DHS immigration officers in the execution of a civil or criminal search or arrest warrant for individuals suspected of being in violation of federal immigration law—for example, by providing tactical officers to join the federal officials during higher risk operations, or providing perimeter security for the operation (*e.g.*, blocking off public streets).

- State and local governments providing state equipment, facilities, or services for use by federal immigration officials for official business.

- Where independent state or local law grounds provide a basis for doing so, state and local law enforcement officers seizing evidence or initiating a stop of an individual at the request of DHS immigration officers where the seizure or stop would aid an ongoing federal investigation into possible violations of federal immigration law.

- Allowing federal immigration officials access to state and local facilities for the purpose of identifying detained aliens who are held under the state or local government's authority, but who also may be of interest to the Federal Government.

- Where state government officials learn in the normal course of state business of possible violations of federal immigration law, referring those possible violations to DHS immigration officials on a case-by-case basis.

13

- State or local governments sharing information related to immigration matters with DHS—whether this occurs by state or local governments utilizing standing information-sharing programs established by DHS, developing relationships with local DHS offices through which information is shared on a regular basis, or making calls to DHS on a case-by-case basis.

- A state or local government exercising certain immigration authorities delegated to it by DHS pursuant to a written agreement.

B.  **Impermissible Actions**

- State and local governments attempting to independently remove an alien from the United States or imposing sanctions on an alien due to a suspected violation of federal immigration law.

- State and local governments establishing programs under which aliens currently in foreign countries may seek permission to enter the United States, or state or local governments independently facilitating the entry of aliens into the United States.

- State governments mandating that state or local law enforcement officers inquire into the immigration status of a specified group or category of individuals.

- State governments requiring aliens, because of their status as aliens, to perform certain tasks or satisfy certain criteria that the INA and federal law neither requires nor expressly authorizes, in order for those aliens to avoid sanctions by state officials.

- State or local governments creating state prohibitions or imposing civil or criminal sanctions for conduct that is within the scope of the INA, even if not prohibited by the INA—for example, penalizing aliens present in the United States without lawful status, penalizing aliens who are in violation of federal registration requirements, or prohibiting aliens who do not have work authorization from the Federal Government to seek work within a state.

- State or local government officials consistently referring certain classes of individuals or matters to DHS for some action to such an extent as to risk burdening limited DHS resources and personnel either after being asked by DHS not to refer those matters or where such referrals fall outside of DHS priorities.

- State and local governments creating a program that authorizes aliens to work in their jurisdictions without regard to whether the aliens have work authorization from the Federal Government.

- State and local governments proscribing or penalizing the use of consular

14

identification cards or other documents, in circumstances where their use would be reasonably related to fulfilling the United States' treaty-based obligation to inform arrested or detained aliens that they may have their country's embassy or consulate notified, and that officials from the embassy or consulate must be allowed access to them upon request.