2019 WL 2357307
Only the Westlaw citation is currently available.
United States District Court, S.D. Illinois.

Jose F. ARROYO, # M53474, Plaintiff,
v.
John BALDWIN, Jeffrey Dennison, Sheyla Clark, and Julia Tanner, Defendants.

Case No. 19-CV-0027-NJR
|
Signed 06/04/2019

**Attorneys and Law Firms**

Jose F. Arroyo, Vienna, IL, pro se.

### MEMORANDUM AND ORDER

ROSENSTENGEL, Chief Judge:

*1 Plaintiff Jose Arroyo, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Shawnee Correctional Center ("Shawnee"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff seeks injunctive relief to remove an immigration detainer warrant from his inmate record that originated while he was incarcerated at Menard Correctional Center ("Menard") and is still on his record today at Shawnee.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### The Complaint

In his Complaint, Plaintiff alleges that he was tricked into signing an I-200 immigration form, which resulted in the placement of an immigration detainer warrant on his inmate record. He alleges that he was singled out for this treatment because he is a Latino, and that such an action by prison officials violates the Illinois Trust Act. He has attempted to remedy the issue via grievance channels to no avail. He seeks injunctive relief on his own behalf and expresses a desire to make the case a class action suit because he believes there are many other similarly situated individuals who have been, or will be, harmed by the practices he identifies.

For ease of understanding, the Court will divide Plaintiff's complaint into the following claims:

**Count 1: Fourteenth Amendment Due Process violation by Defendant Sheyla Clark for failing to satisfactorily respond to grievances and correspondence about Plaintiff's immigration warrant on his inmate master record file;**

**Count 2: Fourteenth Amendment Due Process violation by records office supervisor for failing to satisfactorily assist Plaintiff in investigating or resolving the immigration warrant on his inmate master record file;**

**Count 3: Violation of Due Process and the Illinois Trust Act by placing or maintaining an I-200 immigration warrant on Plaintiff's inmate master record file;**

**Count 4: Violation of Equal Protection by disparate application of the Illinois Trust Act in relation to Latinos and Blacks**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.** [1] Notably, Plaintiff names John Baldwin and Jeffrey Dennison as defendants, but he does not make a single factual allegation pertaining to either individual. A complete failure to associate facts with named defendants is a failure to state a claim, so dismissal of these individuals without prejudice is appropriate.

*2 Plaintiff alleges that his trouble with immigration detainers commenced while he was incarcerated at Menard.

In February 2016, he claims that an officer and a counselor visited his cell with a piece of mail, showed him the address block, and required him to sign the document prior to disclosing the contents (Doc. 1 at 11). After he signed, they revealed the contents of the document to be an I-200 immigration warrant (*Id.*). He alleges "because the forms "I-200" and "I-247" shows that they have "Biometric confirmation of my person" and "records check of Federal Databases that affirmatively indicate by themselves or in addition to other reliable information" and "the execution of charging document to initiate removal proceedings against my person"; Since May 2017, I tried to get copies of any records of evidence against my person from the Department of Homeland Security ..." to no avail (*Id.* at 11-12). Plaintiff alleges that he repeatedly sought information about his immigration status from the Department of Homeland Security (DHS) and other related entities, but the responses led to nothing (*Id.* at 12). Based on the lack of responsive information, he began to seek removal of the immigration warrant from his inmate master record file (*Id.*). He claims that IDOC personnel have refused to remove the warrant, even after he told them that I-200 warrants were rendered unenforceable by the Illinois Trust Act as of August 2017 (*Id.* at 12-13).

In October and November 2017, Plaintiff sought removal of the detainer from his master record by contacting counselor Sheyla Clark (Doc. 1 at 13). On the first occasion, Clark told Plaintiff to contact the records office, and on the second occasion, she told him the immigration warrant would not be removed from his file (*Id.*). Plaintiff attempted to contact the records office numerous times via plain written request and via formal grievance (*Id.*). Initially he was asked to provide proof that there should not be an immigration warrant against him (*Id.*). Next, he was told to contact counselor Reeder (*Id.* at 13-14). In March of 2018, Plaintiff followed up with the records office supervisor about the proof he sent that the immigration warrant was not valid (*Id.* at 14). The male records supervisor stated that they had a valid warrant for him and did not address whether it would be removed (*Id.*). Plaintiff asserts that this response is clearly erroneous (*Id.*).

Plaintiff surmises, because of his unsuccessful attempts to have the warrant removed from his record, that IDOC officials keep immigration warrants on blacks and Latinos as a form of intentional mistreatment of those individuals (Doc. 1 at 14-15). From July to September 2018, Plaintiff pursued additional communication and grievances with the records office about the immigration warrant unsuccessfully (*Id.* at 15). In October 2018, a grievance about the issue was deemed a duplicate (*Id.*). In response to an October 13, 2018 grievance, the records office allegedly told Plaintiff that he had an immigration warrant since August 5, 2015 (*Id.* at 15-16). Plaintiff claims that this signals an intent by IDOC to keep invalid warrants on record for malicious purposes (*Id.*).

Plaintiff identifies by name two individuals who were allegedly transferred from IDOC to another facility after September 2017 for deportation purposes (*Id.* at 16). He alleges that the transfers were malicious and deceptive and that they foreshadow harm against other Latinos by violations of the Illinois Trust Act (*Id.*). Plaintiff indicates that he would like to pursue his claims as a class action because he believes multiple individuals will be harmed by the IDOC's conduct, and he believes the harms are capable of repetition but evading review (*Id.* at 16-17).

Plaintiff seeks broad injunctive relief, but in essence, he wants the I-200 and any associated documentation removed from his inmate master record (Doc. 1 at 18).

In support of his Complaint, Plaintiff submitted: copies of his communication with the records office (Doc. 1 at 23-28); copies of grievances (*Id.* at 29-34); copies of correspondence with federal agencies about his immigration status (*Id.* at 36-44); an affidavit from himself, and two affidavits from others in Spanish (*Id.* at 46-49); an immigration warrant dated January 15, 2017 (*Id.* at 51); an immigration detainer dated January 15, 2017 (*Id.* at 52); prison call passes (*Id.* at 54-59); and correspondence seeking legal representation (*Id.* at 61-64). He also included a memorandum about jurisdiction and supplemental jurisdiction (Doc. 1-1), and a memorandum in support of challenging immigration holds and warrants (Doc. 1-2).

**\*3** In the memorandum challenging immigration warrants and holds, Plaintiff alleges that discrimination is the only plausible explanation for IDOC's actions with immigration warrants and holds (Doc. 1-2 at 3-4). He claims that Shawnee officials have intentionally refused to remove immigration documents from his record in violation of the Illinois Trust Act, and that doing so constituted a failure to train or supervise or to follow the law by those employees (*Id.* at 4). Current deportation practices violate procedural due process because individuals are not receiving proper notices to appear as part of deportation from prison custody (*Id.* at 5). Plaintiff then goes on for six pages about the importance of an appropriate

notice to appear, in light of the Supreme Court's holding in *Pereira v. Sessions*, 138 S.Ct. 2105 (2018) (*Id.* at 6-11).

**Discussion**

*Count 1*
Plaintiff alleges that his due process rights were violated when Sheyla Clark denied his grievances. Inmate grievance procedures do not give rise to a liberty interest protected by the due process clause. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Thus, the claim against Sheyla Clark will be dismissed without prejudice.

*Count 2*
In Count 2, Plaintiff alleges that a record office supervisor failed on multiple occasions to respond to his queries about the immigration warrant in his inmate master record file. He identifies Julia Tanner as a record office supervisor in his complaint, but he does not specifically use her name in the portion of the complaint discussing his queries to the record office. If he is referencing her in the body of the complaint, he fails to state a claim against her because grievance procedures or written queries in prison do not give rise to a protected liberty interest. *See Antonelli*, 81 F.3d at 1430. Even if Plaintiff is referring to a John or Jane Doe record supervisor other than Tanner, he has failed to state a claim for the same reason. Accordingly, Count 2 will be dismissed as to Tanner or any other potential defendant without prejudice.

*Count 3*
The Illinois Trust Act contains provisions that limit interaction between local law enforcement agencies and Federal immigration agencies. 5 ILCS § 805. The Act took effect on August 28, 2017. It prohibits a prison from "detain[ing] or continu[ing] to detain any individual solely on the basis of any immigration detainer or non-judicial immigration warrant or otherwise comply[ing] with an immigration detainer or non-judicial immigration warrant." 5 ILCS § 805/15(a). A detainer is defined as "a document issued by an immigration agent that is not approved or ordered by a judge and requests a law enforcement agency or law enforcement official to provide notice of release or maintain custody of a person, including a detainer issued under Section 1226 or 1357 of Title 8 of the United States Code or Section 236.1 or 287.7 of Title 8 of the Code of Federal Regulations." 5 ILCS § 805/10. A "non-judicial" warrant is "a Form I-200 or I-205 administrative warrant or any other immigration warrant or request that is not approved or ordered by a judge, including administrative warrant entered into the Federal Bureau of Investigation's National Crime Information Center database." *Id.* The Trust Act, however, does not in any way prevent a prison from sending or receiving correspondence from a Federal immigration agency regarding the citizenship or immigration status of an individual. 5 ILCS § 805/5.

Neither a federal nor a state court has interpreted the statute to date. The statute itself does not contain any enforcement framework. "[...] States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint, which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted). Any state action taken for a punitive reason does not automatically encroach upon a liberty interest under the Due Process Clause, even if the action is taken in the absence of any state regulation. *Id.* The *Sandin* Court held that the chance a punitive action by a prison official could impact the future confinement or possibility of parole was not, in and of itself, enough to invoke the Due Process Clause. *Id.* at 487.

 *4 Plaintiff's assertions and the lack of guiding precedent make it difficult to discern if he has stated a valid claim. There are potential problems with Plaintiff's claim because he relies on the Illinois Trust Act, which became law after he alleges he received a detainer in prison. The Act does not contain procedural steps to dispute its application, nor does it indicate if it is retroactively applicable. Even if the Act does not apply retroactively, it still may apply to afford Plaintiff future protection if there is nothing more than an I-200 request by immigration authorities for IDOC to hold him 48 hours beyond his release date. Plaintiff also does not explain how the existence of a detainer on his master record matters, if it is unenforceable under the Trust Act. This too, however, is speculative, because Plaintiff's projected release date is in 2033—a time when the Trust Act may cease to exist. These problems are just an illustration of the multitude

of uncertainties surrounding Plaintiff's potential claim. The Court cannot say Plaintiff has failed to state a claim for initial screening purposes because there are too many uncertain variables.

The claim shall proceed against each individual who Plaintiff alleges has taken specific actions tied to the detainer. Sheyla Clark and Julia Tanner have each allegedly taken actions to deny Plaintiff's requests and grievances regarding the detainer and his inmate master record, so these individuals may fit within the specter of a due process claim. Plaintiff has not, by contrast, explained how Dennison or Baldwin were made aware of his issue with the detainer or how they took negative action in relation to it. Merely naming an individual in the caption is not sufficient to state a claim against them. Accordingly, Count 3 shall proceed only as to Clark and Tanner. Count 3 shall be dismissed as to Dennison and Baldwin without prejudice.

*Count 4*

Plaintiff alleges that the IDOC violated his equal protection rights, and the rights of other similarly situated individuals because it intentionally utilizes immigration detainer and warrant procedures against Latinos and Blacks. The Seventh Circuit carefully explained the intertwined concepts of due process and equal protection in *Shango v. Jurich,* 681 F.2d 1091 (7th Cir. 1982).

> Not every denial of a right conferred by state law involves a denial of the equal protection of the laws. Rather, the "Equal Protection Clause has long been limited to instances of purposeful or invidious discrimination rather than erroneous or even arbitrary administration of state powers. The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action. A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation. Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker singled out a group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group. An administrative decision which misinterprets or distorts a valid state law can result in a denial of equal protection if there is such a design or intent to discriminate.

*Id.* at 1104.

Plaintiff's equal protection claim suffers from the same weakness as his due process claim, in so much as it is vague and conclusory. He alleges that equal protection violations must be present because he has lost contact with other Latinos who were presumably transferred to other custodial facilities for deportation purposes. Sheyla Clark and Julia Tanner are the only named individuals associated with specific actions in the Complaint. No factual allegations, however, have been stated as to either defendant that suggest they have treated Plaintiff distinctively based on his race. Plaintiff may be alleging that there is a detainer on his record in the first place because he was targeted as a Latino, but that problem does not lie with Clark or Tanner because they work at Shawnee and he alleges that the detainer originated at Menard. From the facts and legal principles identified, the Court cannot make out a meaningful equal protection claim against a named defendant. To the extent that the Court misinterpreted this argument in Plaintiff's complaint, he can seek to file an amended complaint clarifying his concerns.

**\*5** Plaintiff's discussion of notice to appear procedures in deportation proceedings is irrelevant to his current predicament. His current concern is that his master inmate record contains a detainer or warrant, but prison official's reluctance to remove the document(s) does not automatically place Plaintiff in harms way. He is not due to finish his term of incarceration until 2033, at which time the legal landscape regarding deportation proceedings may be entirely different. As to his interest in bringing a class action suit, his claims are not clear enough at this juncture for the Court to determine whether a class action may be an appropriate vehicle. The claim most likely to proceed on a class basis would be the equal protection claim, but the Court finds that Plaintiff has failed to sufficiently state an equal protection claim at this juncture. The Complaint will continue as to Count 3, but there will be no consideration of class certification at this juncture. The parties to this litigation will benefit from the case proceeding beyond the Complaint to service and responses from the named defendants.

### Request for Injunctive Relief

Plaintiff requests extensive injunctive relief including: a declaration that his rights were violated; a directive to all named defendants that they not treat him unfairly in the future or interfere with his upcoming trial; a directive that defendants no longer directly or indirectly notify immigration agencies about the immigration status of inmates; and a directive that

defendants no longer transfer individuals from one facility to another to be picked up by immigration officials (Doc. 1 at 18). In light of this request, the Clerk of Court is **DIRECTED** to **ADD** a Motion for Preliminary Injunction as a docket entry in the Case Management/Electronic Case Filing ("CM/ECF") system. Plaintiff did not file a separate motion in support of the request, however, and he did not set forth the reasons he is entitled to this relief under Rule 65(a) of the Federal Rules of Civil Procedure. If Plaintiff wishes to pursue the Motion, he must file a brief in support of the motion for preliminary injunction on or before **July 8, 2019**. Failure to do so will result in denial of the motion without prejudice.

### Pending Motions

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3), which is **DENIED**.[2] According to the Motion for Recruitment of Counsel, Plaintiff's primary language is not English, and he has received assistance of counsel in other matters. (Doc. 3, pp. 1-2). Obviously, Plaintiff has identified a language impairment that may deter his ability to pursue this action *pro se.* Nonetheless, the motion will be denied at this time. Plaintiff states that he has written a few attorneys in an attempt to retain counsel, but he is they have declined his case due to having a full case load and small staff. (Doc. 3, p. 1). The Court finds that, Plaintiff has provided no proof of rejections from counsel and his language barrier has not precluded him from filing a complaint, so the recruitment of counsel is premature. Moreover, given the early stage of the litigation, it is difficult to accurately evaluate the need for assistance of counsel. See *Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel ... cannot be gauged."). The Court encourages Plaintiff to renew his request for the appointment of counsel at a later date. If Plaintiff does renew his request, he should give the Court rejection letters from at least three lawyers to prove that he has made reasonable efforts to find a lawyer on his own.

For the reasons stated above, the Motion for Recruitment of Counsel (Doc. 3) is **DENIED** without prejudice. The Court will remain open to appoint counsel as the case progresses.

Plaintiff also included a detailed Motion for Discovery (Doc. 4) which is hereby **DENIED** without prejudice. The Motion is premature. As the case proceeds this Court will enter scheduling and discovery orders which will facilitate Plaintiff's ability to seek the type of information he requests. Accordingly, at this juncture, Plaintiff's Motion is unnecessary.

### Disposition

**\*6** **IT IS HEREBY ORDERED** that **COUNT 1** will be **DISMISSED** without prejudice as to Sheyla Clark because it fails to state a claim.

**IT IS FURTHER ORDERED** that **COUNT 2** will be dismissed without prejudice as to Defendant Julia Tanner because it fails to state a claim.

**IT IS FURTHER ORDERED** that **COUNT 4** will be dismissed without prejudice as to all named defendants.

**IT IS FURTHER ORDERED** that Defendants Jeffrey Dennison and John Baldwin are dismissed without prejudice because they are not named in the body of the Complaint.

**IT IS FURTHER ORDERED** that **COUNTS 3** shall proceed against Defendants Sheyla Clark and Julia Tanner.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants Sheyla Clark and Julia Tanner: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendants' place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, if a defendant can no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis is granted. See 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**Notice to Plaintiff**

**\*7** The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature.

**All Citations**

Slip Copy, 2019 WL 2357307

---

**Footnotes**

1    See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

2    In evaluating Plaintiff's Motion for Recruitment of Counsel, the Court applies the factors discussed in Pruitt v. Mote, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.