IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Pedro Tlapa Castillo,<br><br>             Plaintiff,<br><br>  v.<br><br>David Snyders,<br><br>             Defendant,<br><br>------------------------------------------<br><br>State of Illinois,<br><br>             Intervenor. | Case No. 3:19-cv-50311<br><br>Judge Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

**I. Background**

Stephenson County Sheriff David Snyders ("the Sheriff"), and his officers, arrested Pedro Tlapa Castillo ("Tlapa")[1] for violation of a local traffic law. Dkt. 18, at 3. During booking, the Sheriff's employees asked Tlapa where he was born. Dkt. 35, at 5. Tlapa responded that he was born in Mexico. *Id.* As the Sheriff's Department regularly does, *id.* at 4, it informed the Immigration and Customs Enforcement (ICE) that it had detained an individual that had been born in a foreign country. *Id.* at 5. Federal immigration officers at ICE then declared, through a detainer form, an intent to take Tlapa into custody. *Id.* The Sheriff, acting on the ICE detainer form, held Tlapa and transferred him into federal custody. *Id.*

---

[1] Plaintiff's counsel refers to Plaintiff as "Mr. Tlapa." Dkt. 18, at 2.

Tlapa filed this action in state court, claiming false imprisonment, abuse of process, and violations of both the Illinois Trust Act and the Illinois Constitution. Dkt. 1-1, ¶ 1. Later, the Sheriff filed a notice of removal based on the Federal Officer Removal Statute, 28 U.S.C. § 1442(a). Dkt. 1. Tlapa then moved the Court to remand the case back to the Circuit Court of Stephenson County. For the reasons set forth below the Court denies Tlapa's motion to remand. The case will continue in federal court.

## II. Federal Officer Removal Statute

The Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), permits a defendant to remove state litigation to federal court when the defendant is a federal officer, or any person acting under a federal officer, "for any act under color of such office." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 145 (2007) (quoting 28 U.S.C. § 1442(a)(1)). "The party seeking removal bears the burden of establishing federal jurisdiction." *Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018). However, in *Watson*, the Supreme Court instructed federal courts to "liberally construe § 1442(a)." *Id.* (citing *Watson*, 551 U.S. at 147).

In interpreting the statute, federal courts should keep in mind the statutory purpose of § 1442(a). *Watson*, 551 U.S. at 152. This includes the need to avoid any state-court bias against federal defenses and to provide a federal forum to those individuals entitled to assert a federal defense—like immunity. *Id.* But the "basic purpose of the statute is to protect the Federal Government from the interference with its 'operations' that would ensue" if a state tried federal officers and their

agents in state court for violations of state law that occurred while those officers and agents performed their federal duty. *Id.* at 150 (quoting *Willingham v. Morgan*, 395 U.S. 402, 406 (1969)).[2]

To begin, the state court defendant need only follow the general pleading requirements of Federal Rule of Civil Procedure 8(a) when filing a notice of removal. *Betzner*, 910 F.3d at 1014. In *Betzner*, the Seventh Circuit explained that "the standard in assessing removal allegations under § 1442 starts with Rule 8(a)'s short and plain statement requirement." *Id.* There, the district court remanded the case because the removal notice failed to include "facts, supporting affidavits, or exhibits supporting" the claims. *Id.* at 1013–14. But the Seventh Circuit held that the state court defendant was not required to submit evidentiary support and was merely required to follow the typical pleading standards laid out in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). *Betzner*, 910 F.3d at 1014–15.

Removal from state to federal court under the § 1442(a)(1) is proper when the state court defendant (1) is a person within the meaning of § 1442; (2) was acting under the United States, its agencies, or its officers; (3) was acting under color of

---

[2] The purpose of the statute is premised upon the archaic stereotype that agents of the federal government will not get a fair shake in a local state court. *Watson*, 551 U.S. at 147–52 (discussing history of the statute). Instead, according to the rationale, the federal agents will get homered. Urban Dict. (1999–2020), https://www.urbandictionary.com/define.php?term=homered (last visited Oct. 27, 2020). Assuming the archaic stereotype to be correct (an assumption the Court is highly skeptical of), to be candid, that purpose is not fulfilled by removal of a case from Stephenson County to the United States District Court for the Northern District of Illinois in which the local sheriff of Stephenson County is being sued in a local circuit court. But plain text trumps purpose. *INTL FCStone Fin. Inc. v. Jacobson*, 950 F. 3d 491, 499 (7th Cir. 2020). As shown in this order, the plain text of the removal statute as well as other statutes support jurisdiction in this case.

federal authority; and (4) has a plausible federal defense. *Id.* (laying out the statutory elements and noting that the federal defense need only be plausible). In this case, Tlapa does not challenge the first element. Rather, he challenges removal on the other three elements. Dkt. 18, at 4.

### A. "Acting Under" federal authority

The second element of the federal officer removal test requires that the person was "acting under the United States, its agencies, or its officers." *Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018). Much of the existing case law interpreting what it means to act under federal authority deals with *private* persons allegedly acting under the authority of a federal officer or agency. Here, the individual claiming to have acted under federal authority is the Sheriff of Stephenson County, Illinois. Dkt. 1. The distinction is noticeable. But if the Sheriff acted within his lawful authority, it is a distinction without a difference. Nothing in the statute or case law suggests that the Sheriff's role as a public, rather than private, actor would have changed the outcome of prior cases or led to a different line or reasoning. Indeed, federal courts must construe the statute liberally, *Watson*, 551 U.S. at 147, and the need to provide a federal forum and ensure an absence of state bias militates toward the application of existing private-actor precedent to this case. *See id.* at 150–152.

In *Watson*, the Supreme Court explained that acting under "typically involves 'subjection, guidance, or control.'" *Id.* at 151 (quoting Webster's New International Dictionary 2765 (2d ed. 1953). Furthermore, the actions of the federal officer or

4

agent must have involved "an effort to *assist*, or to *carry out*, the duties or tasks of the federal superior." *Id.* at 152 (emphasis in original). The Court went on to explain that highly regulated companies that merely comply with those regulations have not acted under a federal officer or agency. *Id.* at 153. The Court could find no evidence of delegation of any authority by the federal agency, and no evidence was presented showing a special relationship—contractual, employer-employee, principal-agent, or otherwise. *Id.* at 156. The underlying rationale is clear: When an entity merely complies with existing federal regulatory requirements, no relationship has been established. If that were enough, the scope of the statute would expand to its breaking point. Instead, a relationship must be formed such that the individual or company has agreed to act on behalf of the federal officer or agency to further a federal purpose. *Id.* at 152 ("In our view, the help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law.") (emphasis in original).

The Sheriff contends that, when he acted under the ICE detainer form, he was acting at the "direction" of federal immigration officers. Dkt. 35, at 4–5. Tlapa responds that the ICE detainers are mere requests and that the Sheriff was under no legal obligation to comply. Dkt. 18, at 2. The Court does not see the need to resolve this question. Nothing in the binding precedent or the relevant statutes prevents voluntary agreements from bringing state defendants within the meaning of § 1442(a)(1). *Baker v. Atlantic Richfield Co.*, 962 F.3d 937, 942 n.1 (7th Cir. 2020). Rather, the Supreme Court in *Watson* indicated that voluntary agreements could be

5

sufficient when it included "principal-agent" in the list of special relationships that could give rise to removal. *Watson*, 551 U.S. at 156.

The parties cite no cases of a principal-agent special relationship giving rise to removal under § 1442, and the Court found none. Still, that the present case is uncommon does not negate the Supreme Court's instruction that such a relationship can satisfy the requirement that a person acted under a federal officer or agency. Given the instruction to construe § 1442(a)(1) liberally, *Watson*, 551 U.S. at 147, the Court will look to any circumstances in which agency relationships typically arise. The second and third restatements agree that agency relationships are formed when one party manifests assent to act on behalf of a principal and subject to its control, and that principal manifests assent to the relationship. Restatement (Third) of Agency § 1.01 (2006); Restatement (Second) of Agency § 1 (1958). While contracts will often exist, agency relationships can nonetheless be formed without the formalities of contract formation. Restatement (Third) of Agency § 1.01, cmt. d (2006).

Here, the Sheriff has manifested a willingness to act on behalf of federal authorities. He alleges that he "worked hand-in-hand" with ICE agents to help them carry out their function as federal immigration officers. Dkt. 1, ¶ 5. The Sheriff performed a task—the continued detention of a suspected undocumented person—to afford ICE officers the chance to take the suspect into custody. In performing this task, the Sheriff was acting on behalf of the ICE officers to effectuate an objective of the federal government. Realistically, ICE officers cannot

be posted in every city and town, waiting to take future suspects into custody on a moment's notice. The formation of agreements with local authorities to temporarily hold suspects allows ICE agents time to take them into custody. 8 C.F.R. § 287.7(a) (explaining that local compliance with detainer requests allows DHS to take custody of a suspected undocumented person "in situations when gaining immediate physical custody is either impracticable or impossible"). Given these circumstances, the Court is satisfied that the Sheriff has manifested an intent to act on behalf of federal authorities to carry out their objective of enforcing federal immigration law.

Still, the federal authorities must manifest their intent for the Sheriff to act on their behalf. This requirement is easily satisfied here. Both parties agree that ICE officers requested assistance from the Sheriff through the use of an ICE detainer form. Dkt. 1, ¶5; Dkt. 18, at 2. The Sheriff contends that 8 U.S.C. § 1357(g)(10) authorized him to comply with the ICE detainer. Tlapa responds that "[a]t most this provision authorizes states to choose whether to allow or require their law enforcement officers to comply." Dkt. 43, at 3 (citing *United States v. California*, 921 F.3d 865, 887 (9th Circ. 2019)).

For starters, the plain text of the statute applies to agreements with either the State or "any political subdivision of the State." 8 U.S.C. § 1357(g). Thus, the implication that only the State, but not one of its subdivisions, can choose to comply cannot be correct. As to the Sheriff's contention that the statute authorized his actions, the Sheriff does not allege that he entered into a formal written agreement,

7

as contemplated by § 1357(g).[3] Rather, the Sheriff alleges that the ICE detainer request was valid without a formal written agreement and that he was authorized to cooperate by § 1357(g)(10). That subsection does not require compliance with the detainer form; it merely states that the statute does not prevent communication and cooperation outside of a written agreement. Thus, to the extent that it matters, the federal authorities were not operating outside their scope by issuing the ICE detainer form. The Sheriff acted in response to a valid request by federal authorities. That request manifested assent to the Sheriff acting on their behalf to perform a federal function.

To be sure, complying with a request seems less like taking direction than complying with a regulatory requirement. But the fact that the Sheriff was presented with a request is what causes his assent to result in the formation of a special relationship. He had no duty to assist federal officers. He was not complying with any regulation. He was agreeing to act on behalf of a federal agency when he did not have to do so. Furthermore, the goal of the request was to effectuate a federal function, the enforcement of immigration law. Although local law enforcement may not be required to act as agents of the federal government, their assistance is what allows ICE the chance to take custody of suspected undocumented persons.

---

[3] The plain language of § 1357(g) indicates that the written agreements it contemplates are between the state or state subdivision and the Attorney General. 8 U.S.C. § 1357(g). Other sections of that statute refer to both the Attorney General and "the Service," while § 1357(g) refers only to the Attorney General. *See, e.g.*, 8 U.S.C. § 1357(a). This indicates that Congress intended for the Attorney General to handle § 1357(g) written agreements. Here, the Sheriff has not alleged any communication with the Attorney General, let alone the existence of any written agreement.

Because the Sheriff has consented to act on behalf of ICE officers and at their direction to hold suspects for a specific amount of time, and because those ICE officers have requested the act, the parties formed a sufficient agency relationship for the purpose of § 1442. The Sheriff "acted under" federal officers.

Tlapa argues that even if the Sheriff acted under federal officers, his actions should not qualify under § 1442 because they were not lawful. Dkt. 18, at 7. As the argument goes, the Sheriff's authority derives from state law and county ordinances and he cannot act outside the bounds of that law. *Id.* Tlapa contends that the Sheriff's actions violated the Illinois Trust Act and were therefore unlawful. As Tlapa notes, a state has the "exclusive" authority "to establish its expectations of the law enforcement officers operating under its statutes." *Id.* at 8 (quoting *Lopez-Aguilar v. Marion County Sheriff's Department*, 924 F.3d 375, 392 (7th Cir. 2019). But those "expectations" cannot violate federal law. U.S. Const. art IV, cl. 2 (Supremacy Clause).

Although Tlapa argues that the Sheriff could not have acted under color of federal authority because his actions violated state law, the Court cannot make that determination at this stage. It begs the same question as the Sheriff's federal defense. At the core of the Sheriff's allegations is that his actions could not have violated state law because any state law to the contrary is preempted by federal law and is thus unconstitutional. Dkt. 1, ¶ 7. At this stage, where we adhere to standard pleading requirements, *Betzner*, 910 F.3d at 1014–15, a determination of the merits of the Sheriff's defense would be improper. In this narrow context, the discussion of

9

whether the Sheriff's actions were lawful must be confined to whether his federal defense of preemption is plausible, which is discussed below in element four.

### B. Acting under color of federal law

The third element of the federal officer removal test requires that the person was acting under color of federal authority. *Betzner v. Boeing Co.*, 910 F.3d 1010, 1015 (7th Cir. 2018). The Sheriff alleges that he did so act. Dkt. 1, ¶ 6; Dkt. 35, at 7. This element is distinct from the previous in that it requires a causal connection between the act complained of and the acts of the federal officer or agency. *Betzner*, 910, F.3d at 1015. For example, in *Betzner*, Boeing had properly alleged a causal connection by claiming that it was under the "sole direction" of the U.S. Air Force during the manufacturing process that allegedly caused the plaintiff's illness. *Id.*

Here, the Sheriff alleges that his actions to detain Tlapa are causally connected to the ICE detainer request. Dkt. 1, ¶ 6; Dkt. 35, at 8 ("But for Sheriff Snyders' role in assisting DHS, Sheriff Snyders would not have detained Tlapa on an Immigration Detainer."). In reply, Tlapa argues that the Sheriff was not acting pursuant to any written agreement. Tlapa points out that "DHS's own guidance regarding cooperation under § 1357(g)(10) indicates that § 1357(g)(8) only applies to formal, written § 1357(g) agreements." Dkt. 35, at 8. Tlapa further contends that if § 1357(g)(10) were read to allow the Sheriff to arrest individuals for civil immigration violations, the training and supervision requirements of the rest of § 1357(g) would be rendered superfluous. *Id* at 7–8. That may be so, but the plain language of the statute allows for just that.

10

> Nothing in this subsection shall be construed to require an agreement under this subsection in order for any officer or employee of a State or political subdivision of a State—(A) to communicate with the Attorney General regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States; or (B) otherwise to cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States.

§ 1357(g)(10). Without binding precedent to the contrary, the Court takes Congress at its word. The federal immigration officers were authorized to communicate and cooperate with the Sheriff notwithstanding any lack of a written agreement.

Tlapa points to *Davila v. North Regional Joint Police Board*, 370 F. Supp. 3d 498, 552 (W. D. Pa. 2019). There, the Western District of Pennsylvania opined that "it strikes the Court as a perverse reading of § 1357 to suggest that a local law enforcement officer acts under federal authority whenever the local officer responds to an informal request." The court continued, "Otherwise, a state officer would need only to ask permission from an ICE agent to assist with arresting suspected deportable aliens and that local officer would then essentially have all of the powers and immunities of a federal agent enforcing civil immigration laws." *Id.* That case was in the context of a § 1983 claim, not an invocation of a removal statute. Furthermore, such slippery slope arguments cannot succeed in the face of clear statutory language that allows for communication and cooperation outside of a formal written agreement. Hypotheticals do not trump unambiguous statutory text.

On the other end of the spectrum is *In re NSA Telecommunications Records Order Litigation*, 483 F. Supp. 3d 934 (N.D. Cal. 2007). There, plaintiffs sued Verizon and AT&T in state court for allegedly disclosing call records to the National

11

Security Agency (NSA), which allegedly violated state law. *Id.* at 937. Verizon and AT&T removed to federal court. Part of the plaintiffs' allegations included that AT&T made the telephone records available to the NSA voluntarily and that "[t]hey were not provided under the compulsion of any legal process such as a warrant, court order or subpoena." *Id.* at 944. Still, the court held that the telecommunications companies were acting under federal officers and under the color of their authority because, in part, the companies acted to assist those federal authorities to carry out an objective of the NSA. *Id.* at 945 (noting that the companies "voluntarily acted as agents for the NSA's purpose" and not for their own benefit). Though in a different context, the facts before the Court present similar circumstances. Here, the Sheriff alleges that he acted under federal agents for a federal purpose and that such actions were under color of federal authority. Like AT&T and Verizon, the Sheriff acted voluntarily to assist federal authorities in the completion of their function and those actions are the causally connected to Plaintiff's claims.

Because the gravamen of Tlapa's claims against the Sheriff arise from the Sheriff's actions to assist federal authorities in their federal objective, the Sheriff has sufficiently alleged that he acted under color of federal authority.

### C. Federal Defense

In addition to the statutory requirements detailed above, Article III of the U.S. Constitution requires, as a fourth element, that state court defendants plausibly allege a federal defense to maintain removal to federal court under §

12

1442(a)(1). *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180 (7th Cir. 2012) (noting that "[t]his requirement creates Article III jurisdiction"). Alleging the federal defense provides the district court with "the federal law under which the action against the officer arises." *Id.* (quoting *Mesa v. California*, 489 U.S. 121, 136 (1989)). This acts as an exception to the well-known rule from *Louisville & Nashville Railroad Co. v. Mottley*, 211 U.S. 149 (1908), which established the requirement that the federal question arise from the well-pleaded complaint. *Ruppel*, 701 F.3d at 1180. But to reiterate, the defense need not be proved on the merits. The state defendant is only required to plausible allege a federal defense. *Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018).

Here, the Sheriff argues that the Illinois Trust Act is preempted by federal law. Specifically, he alleges the authority to control immigration is vested solely in the federal government. Dkt. 1, ¶ 7. The Sheriff points to *Arizona v. United States*, 567 U.S. 387 (2012) for the proposition that the states are preempted from "directing state and local officers as to when it is appropriate to arrest aliens on the basis of removability." Dkt. 1, ¶ 7. Although the Court understand that *Arizona* involved different circumstances, the Sheriff's allegations of preemption are sufficient to provide him a federal forum to hear his federal defense. The bar is not high, the Sheriff need only allege a plausible federal defense. He has done so.

Tlapa argues that the Sheriff's preemption defense is not plausible because (1) the Illinois Trust Act does not regulate immigration, (2) federal law does not require compliance with detainer requests, and (3) any requirement to comply with

13

detainer requests would violate anticommandeering doctrine. Dkt. 18, at 9. Tlapa's arguments are not persuasive. These arguments draw the Court into a discussion of the merits of the Sheriff's preemption challenge. Such discussion is improper at this stage. Under § 1442(a)(1), the Court asks only whether the alleged federal defense is plausible, not whether it is correct.[4] The Court is "concerned with who makes the ultimate determination, not what that determination will be." *Betzner*, 910 F.3d at 1015 (quoting *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1182 (7th Cir. 2012)).

### III. Conclusion

For the reasons set forth above, Tlapa's motion to remand [17] is denied. The Sheriff's allegations are sufficient to confer jurisdiction on this Court. The Court notes that the Sheriff's preemption claim is already being litigated in federal court in this same district before Judge Reinhard in case number 3:20-cv-50094. Therefore, by November 13, 2020, the parties are directed to submit position memoranda identifying the best procedure to reach a just, speedy, and inexpensive determination of these actions. The memoranda should be filed in both cases.

Date: October 27, 2020

_____
Honorable Iain D. Johnston
United States District Judge

---

[4] The Sheriff also argued for a qualified immunity defense. However, such defense was not alleged in the Sheriff's notice of removal and is not necessary for the resolution of this motion.